MARIA K. BARTH

*v.*

LOUISA LINES *et al.*

*Filed at Mt. Vernon June 12, 1886.*

1.　DOWER—*ante-nuptial agreement, as a bar to dower right.*　An ante-nuptial agreement entered into by parties of mature years, with a full understanding of its meaning, whereby each party released and waived his or her right of dower in the lands and estate of the other, and it was provided that each should retain his or her separate property, then had or afterwards acquired, free from any and all claims of the other growing out of the mar-

riage relation: *Held,* that such agreement operated as a bar to the claim of dower by the wife in the husband's lands, resting upon the consideration of his release of his legal rights in her separate estate.

2. The provision of our statute (chap. 41, sec. 7,) that a jointure in favor of an intended wife shall bar any claim for dower by her in the lands of her husband, does not deprive her of the power to bar her right of dower by any other form of ante-nuptial contract.

APPEAL from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

Mr. W. C. KUEFFNER, and Mr. JAMES M. DILL, for the appellant:

In construing marriage settlements, courts incline, in case of doubt, to that construction which renders the arrangement mutually beneficial, and, as far as possible, upholds marital rights of property as adjusted by public policy. Schouler on Husband and Wife, sec. 361.

The contract should not be construed as barring dower, the object being only to secure to each the control of his or her own property during coverture. Any reasonable provision which an adult person agrees to accept in lieu of dower, will amount to an equitable jointure, and although it may be wanting in the requisites of a legal jointure, in equity it will bar dower. *McGee* v. *McGee,* 91 Ill. 551.

An ante-nuptial contract, to bar dower must, be entered into *bona fide,* and make provision for the wife which is reasonable, fair and just. *Grogan* v. *Garrison,* 27 Ohio St. 65; *Stilley* v. *Folger,* 14 id. 647; *Beiser's Appeal,* 92 Pa. St. 267; *Kline* v. *Kline,* 7 P. F. Smith, (57 Pa. St.) 120; *Kline's Estate,* 64 Pa. St. 124; *Pierce* v. *Pierce,* 71 N. Y. 159.

There must be a consideration other than marriage, for the agreement not to claim dower. *Curry* v. *Curry,* 10 Hun, 360; *Power* v. *Sheil,* 1 Malloy, 311.

Before the wife can be deprived of her dower, the agreement must be executed in her favor. *Johnson* v. *Johnson,* 23 Mo. 56; 30 id. 72..

The utmost good faith is required between parties to ante-nuptial contracts, and if the provision secured to the wife be unreasonably disproportionate to the means of the intended husband, it raises the presumption of intended concealment, and throws upon himself the burden of disproof. 3 Wait's Actions and Defences, 669; *Ex parte McBurnie*, 1 DeG., M. & G. 446.

A jointure or marriage settlement, to bar the widow's claim of dower, must be adequate to her support, or, at all events, a fair equivalent to the dower in her husband's estate. 3 Redfield on Wills, chap. 14, sec. 44, par. 5; *Drury* v. *Drury*, 3 Br. P. C. 492; *McCartee* v. *Telle*, 2 Paige, 511.

A jointure, to be a bar, must be something conceded to the wife. 1 Washburn on Real Prop. 270, sec. 22; *Blackman* v. *Blackman*, 16 Ala. 633.

Messrs. Turner & Holder, Mr. R. A. Halbert, and Mr. A. S. Wilderman, for the appellees:

The parties, at the time of making the contract, were *sui juris*. It was respecting a subject-matter which was perfectly legitimate. It was not opposed to any rule of law, nor to any principle of sound public policy. *McGee* v. *McGee*, 91 Ill. 548; *Phelps* v. *Phelps*, 72 id. 545; *Parsons* v. *Eli*, 45 id. 232; *Weaver* v. *Weaver*, 109 id. 225; *Andrews* v. *Andrews*, 8 Conn. 79; *Naill* v. *Mourer*, 25 Md. 532; *Gelzer* v. *Gelzer*, 1 Bailey's Eq. 389; *Wentworth* v. *Wentworth*, 69 Me. 247; *Jacobs* v. *Jacobs*, 42 Iowa, 600; *Cauley* v. *Lawson*, 5 Jones' Eq. (N. C.) 132; *Culberson* v. *Culberson*, 37 Ga. 296; *Freeland* v. *Freeland*, 128 Mass. 509; *Stilley* v. *Folger*, 14 Ohio, 610; *Baldwin* v. *Carter*, 17 Conn. 201; *Logan* v. *Phillips*, 18 Mo. 22.

It was made upon a valuable and sufficient consideration—marriage—and the mutual covenants of the parties to waive their rights in each other's property. *McGee* v. *McGee*, 91 Ill. 548; *Otis* v. *Spencer*, 102 id. 622; *Phelps* v. *Phelps*, 72 id. 545; *Prewitt* v. *Wilson*, 103 U. S. 22; *Magniac* v. *Thomp-*

*son,* 7 Pet. 348; *Herring* v. *Wickham,* 29 Gratt. 628; *Charles* v. *Charles,* 8 id. 486; *Peck* v. *Peck;* 12 R. I. 485; *Stratton* v. *Stratton,* 58 N. H. 473; *Heald's Petition,* 22 id. 265; *Ludwig's Appeal,* 101 Pa. St. 535.

The contract being duly executed and acknowledged, it was incumbent upon appellant to show some defect in it, upon which it would be declared void. *Baird* v. *Jackson,* 98 Ill 78; *Blackman* v. *Hawks,* 89 id. 512; *Myers* v. *Parks,* 95 id. 408; *Mahaffy* v. *Mahaffy,* 63 Iowa, 55; *Ladd* v. *Ladd,* 8 How. 10.

This is not a proceeding to specifically enforce the antenuptial contract, but one to avoid it. *Naill* v. *Maurer,* 25 Md. 532; *Wentworth* v. *Wentworth,* 69 Me. 247; *Gelzer* v. *Gelzer,* 1 Bailey's Eq. 389; 1 Bishop on Married Women, sec. 425.

The contract having been executed by the parties upon a sufficient consideration, by a fair and liberal construction, most certainly intended to and does carry the title to the property beyond the termination of John Barth's life, and bars appellant's claim to dower. 1 Bishop on Rights of Married Women, sec. 425; Stewart on Marriage and Divorce, sec. 41; *Wentworth* v. *Wentworth,* 69 Me. 247; *Culberson* v. *Culberson,* 37 Ga. 296; *Marshall* v. *Beall,* 6 How. 78; *Holmes* v. *Liptroll,* 8 Ga. 281; *Baldwin* v. *Carter,* 17 Conn. 201; *Waters* v. *Tazewell,* 9 Md. 291; *Townshend* v. *Matthews,* 10 id. 251; *Ward* v. *Thompson,* 6 G. & J. 349; *Bullard* v. *Taylor,* 4 Dessau. Eq. 550.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

In June 1875, John Barth, a resident of St. Clair county, a widower, forty-seven years old, with nine children, the owner of about one thousand acres of land, worth from $80,000 to $100,000, and of personal property, worth from $1500 to $2000, married a widow, named Maria K. Lines, now Maria K. Barth, the appellant in this cause. The marriage took place in St. Louis, Missouri, on the 29th day of June A. D. 1875.

Previous to the marriage, an ante-nuptial contract was made between Barth and Mrs. Lines, which was signed by them on June 18, 1875, the day of its date, and acknowledged, on June 21, 1875, before a justice of the peace in St. Clair county. It was recorded in that county on June 8, 1876, and is as follows :

"This agreement, made this 18th day of June, A. D. 1875, between Mary K. Lines, of Mascoutah, in the county of St. Clair, and State of Illinois, of the first part, and John Barth, the second, of the county and State aforesaid, of the second part, witnesséth, that whereas, a marriage is about to be had and solemnized between said parties, and whereas, said Mary K. Lines is possessed of real and personal estate, to-wit, certain houses and lots in the platted town of Mascoutah, a stock of store goods, negotiable securities, etc., and the said John Barth, the second, is also possessed of real and personal estate, to-wit, farming and timber lands, in the county and State aforesaid, farm stock and negotiable securities ; and whereas, it is mutually desired by the said parties, that the estate of each shall remain separate, and be subject only to the sole control of its respective owner, as well after as previous to the solemnization of the marriage, they hereby mutually agree and covenant, first, that the estate of the said Mary K. Lines shall remain her separate property, subject entirely to her individual control and management, as if she were unmarried, the said John Barth, the second, not acquiring, by force of said marriage, for himself, his heirs, assigns or creditors, any interest therein, or in the use or control thereof, or in the income, rents, profits or dividends arising thereout.

"And whereas, it is also agreed, that all estate, real or personal, which said Mary K. Lines may hereafter acquire or become entitled to in any manner, shall be held by her to her separate use as aforesaid, and be thereby placed beyond the control and management of John Barth, the second :

"Now, therefore, it is agreed by said John Barth, the second, in consideration of the marriage, and of a further consideration hereinafter mentioned, that he will waive, release and relinquish unto the said Mary K. Lines, all the dower interest in the real estate which she now possesses or hereafter may acquire, or in any manner become entitled to, of which he may become vested by force of the contemplated marriage, and at all times during the coverture of said Mary K. Lines, permit her to control and manage said estate, and such estate as may hereafter come to her, as hereinbefore is named, and to receive, expend or re-invest the income, rents and profits and dividends thereof, at her own separate discretion, free from his interference or control, to her own separate use; and the said John Barth, the second, hereby covenants and agrees to and with said Mary K. Lines, her heirs and assigns, that he will warrant and defend said estate and property, and all such estate and property as she may hereafter become in any manner entitled to, to the said Mary K. Lines, against himself and his heirs, to her separate use; that he will permit her to dispose of the same by will, as she may bequeath the same, and that he will not in any manner interfere with her absolute control thereof; that the estate of the said John Barth, the second, shall remain his separate property, subject entirely to his individual control and management, as if he were unmarried, the said Mary K. Lines not acquiring, by force of said marriage, for herself, her heirs, assigns or creditors, any interest therein, or in the use or control thereof, or in the income, rents, profits or dividends arising thereout.

"And whereas, it is also agreed, that all estate, real or personal, which said John Barth, the second, may hereafter acquire or become entitled to in any manner, shall be held by him to his own separate use as aforesaid, and be thereby placed beyond the control or management of said Mary K. Lines:

"Now, therefore, it is agreed by said Mary K. Lines, in consideration of said marriage and of the foregoing covenants on

the part of said Barth, the second, that she hereby expressly waives, releases and relinquishes unto said John Barth, the second, all dower interest in the real estate which he now possesses or hereafter may acquire, or in any manner become entitled to, of which she may become vested by the contemplated marriage, and will at all times, during the coverture of said John Barth, the second, permit him to control and manage said estate, and such estate as may hereafter come to him, as hereinbefore is named, and to receive, expend or re-invest the income, rents, profits and dividends thereof, at his own separate discretion, free from her interference or control, at his own separate use. And the said Mary K. Lines hereby covenants and agrees to and with said John Barth, the second, his heirs and assigns, that she will warrant and defend said estate and property, and all such estate and property as he may hereafter become in any manner entitled to, to said John Barth, the second, against herself and her heirs, to his separate use; that she will permit him to dispose of the same by will, as he may bequeath the same, and that she will not in any manner interfere with his absolute control thereof.

"Witness our hands and seals the day and year above written.

JOHN BARTH, the second. [Seal.]

M. K. LINES.        [Seal.] "

On July 7, 1884, John Barth died intestate, leaving the appellant, his widow, and eleven children, nine of them, the children of a former wife, as above stated, and two of them, the fruit of his marriage with appellant, all of whom are the appellees in this cause.

The appellant filed her bill on September 5, 1884, in the circuit court of St. Clair county, for assignment of dower and homestead, and the contract, above recited, is set up by appellees, as a bar to her claim for dower. The circuit court found it to be a bar and so decreed. This is an appeal from

that decree, and the question, which it brings before us, is, whether the agreement in question is a bar to appellant's right of dower in her deceased husband's lands.

The case of *McGee et al.* v. *McGee et al.* 91 Ill. 548, seems to be decisive of the question. We there held, that an agreement, substantially the same, as that in the case at bar, was, in equity, a bar to the dower of the demandant, although it was wanting in the requisites of a legal or statutory jointure. In that case, the agreement recited, that each party owned real and personal property, and provided, that each should retain the control and possession of his or her own property, free from all claim on the part of the other, and each thereby renounced all claims of dower or otherwise in the lands or personalty of the other.

It is said, however, that the contract, passed upon in *McGee et al.* v. *McGee et al.* was made in 1857, and that, "as the law then was, the husband, on the consummation of the marriage, succeeded to the absolute ownership of the personal property of the wife, and was entitled to curtesy in her real estate, as well as the usufruct thereof," whereas, under the law, as it stood in June 1875, the husband had no estate, as tenant by the curtesy in his wife's land, and a married woman was as much entitled to the separate ownership and control of her personal property, as though she was a *feme sole*. It is, therefore, argued, that, by the agreement now under consideration, Barth surrendered nothing, to the appellant, as a consideration for the release of her dower interest in his lands, which the law did not already secure to her, independently of any contract.

It is to be noted, however, that, when appellant made the agreement in question, she was a woman of mature years, and a merchant, engaged in business for herself. She owned real estate, worth from $1500 to $2000, consisting of two lots, in Mascoutah, upon one of which was a house, in which she kept a store. She also owned a stock of "store goods," worth

some $4000 or $5000.  If she should die before her husband,
he would have dower in her real estate, and become the ab-
solute owner of one-third of her personalty.  By the agree-
ment, he released all claim to the interests, which the law
would thus have given him in her estate, and empowered her
to dispose of it by will, free of any dower rights therein on
his part.  She made the same relinquishment to him of what-
ever interest the law would give her in any of his property.
He was a farmer, and she kept a store.  Each was to control
and manage his or her own property, free from any interfer-
ence by the other.  The marriage seems to have been a sort
of business arrangement.

The statutes of most of the States now make the wife, as
free and independent in the control of her property, as the
husband is in the control of his property.  As a result of this
legislation, the tendency of the modern decisions is to uphold
ante-nuptial contracts, made fairly and without fraud by adult,
single women.  A woman "may bar her dower in any lawful
manner, since by the statutes she can make any lawful con-
tract."  (*Wentworth* v. *Wentworth*, 69 Maine, 244.)  "There is,
perhaps, no principle better settled than that any provision, ·
which an adult, before marriage, agrees to accept in lieu of
dower, will amount to a good equitable jointure."  (*Andrews*
v. *Andrews*, 8 Conn. 79.)  "Where the parties agree before-
hand, that, after marriage, each shall hold his or her ante-
nuptial property to his or her separate use, and on the death
of one of them, neither shall have any marital claim on the
estate of the other, this is, at least in a court of equity, gen-
erally esteemed to be a good bar to dower."  Bishop on the
Law of Married Women, sec. 423.

The provision of our statute, that, when a conveyance is
made to, or in trust for, an intended wife, for the purpose of
creating a jointure in her favor with her assent, to be taken in
lieu of dower, such jointure shall bar any claim for dower by
her in the lands of her husband, (Hurd's Rev. Stat. of 1885,

chap. 41, sec. 7,) "can not be said to deprive her of the power to bar her right to dower by any other form of ante-nuptial contract. * * * This, however, is not the case of a settlement or jointure, but of a contract." *Naill* v. *Maurer,* 25 Md. 532.

Scribner, in his work on Dower (vol. 2, pages 409 and 413), says: "With respect to the legal requisite, that the estate, limited in jointure, be such an estate of freehold as should continue during the wife's life, no such circumstance will be necessary in equity, in order to make the jointure an absolute bar to dower, if the intended wife be of age and a party to the deed; because, as she is able to settle and dispose of all her rights, she is competent to extinguish her title to dower upon any terms, to which she may think proper to agree. * * * The cases are not entirely agreed upon the question, as to whether an ante-nuptial contract, which merely secures to the wife her separate property and makes no provision for her out of the husband's estate, is a good equitable jointure; but, in a majority of the cases, it is held, that, if it be a part of such agreement, that the wife shall relinquish her dower, it will be good in equity."

For the reasons, here stated, we think, that the agreement, made by appellant with her deceased husband, operates as a bar to her claim of dower in his lands. The proof shows, that she entered into it, with a full understanding of its meaning and effect. It rests upon the consideration of her husband's release of all his legal rights in her separate estate. The decree of the circuit court is, therefore, affirmed.

*Decree affirmed.*