JOHNSON, Plaintiff in Error, v. JOHNSON'S ADMINISTRATOR *et al.*, Defendants in Error.

1. An ante-nuptial agreement was entered into in the following form: "Whereas a marriage is about to be contracted by and between the parties to these presents, and they are desirous to regulate the mode of enjoyment and distribution of their separate property; therefore, in consideration of the said marriage, it is agreed by and between the said parties that the separate property shall, during the joint lives of the said parties, form a fund from the income of which the said parties and their issue, if any, shall be supported and maintained; and that, for the purpose of producing such income, the said John W. Johnson shall have the management of the said separate property of the said Lucy Gooding. It is also agreed by and between the parties, that during the coverture either of said parties may, by gift, or sale, in any manner or form whatever, dispose of one-third of his or her said separate property without the other's interposing any obstacle, and without any right in such part of the estate so disposed of remaining in the other party, so that the same shall be free and clear from any claim of such other party. It is also agreed by and between the parties aforesaid, that either of the said parties, at his or her death, may, by will, or declaration in the nature of a will, devise and bequeath to any person whatsoever,

in absolute property, whatever of his or her said separate property may then remain, so that the survivor shall be entirely divested of all interest therein It is also agreed, that, on the death of either party, the survivor shall retain the full right and title in his or her separate property, and the property of the deceased party shall be distributed according to the laws then in force." *Held*, that this ante-nuptial contract did not constitute a *legal bar* to dower within the provisions of the revised code of 1825; (see R. C. 1825, p. 334); neither did the naked agreement amount to an equitable jointure; that, before the wife can be deprived of her right to dower, the agreement must be executed in her favor.

## *Error to St. Louis Land Court.*

The petition of plaintiff is as follows : " The plaintiff states she was married to John W. Johnson in the year 1831, in the city of St. Louis, in the state of Missouri, and she and said Johnson lived together in said city as husband and wife until the 1st day of June, 1854, when said Johnson died without any child or other descendant in being capable of inheriting his estate. A short time before said marriage, said Johnson presented to her articles of agreement to be signed by her and himself, and providing that, whereas a marriage was about to be contracted between them, and they were desirous to regulate the mode of enjoyment and distribution of their said property, in consideration of said marriage, it was agreed their separate property should, during their joint lives, form a fund from the income of which they and their issue, if any, should be supported and maintained. For the purpose of producing such income, said Johnson should have the management of said separate property of the plaintiff; that during the coverture either might, by gift or sale, in any manner, dispose of one-third part of his or her separate property without the other interposing any obstacle, and without any right in such part of the estate disposed of remaining in the other, so that the same should be free and clear of any claim from such other party; that either of said parties, at his or her death, might, by will, or declaration in the nature of a will, devise or bequeath to any person, in absolute property, whatever of his or her said separate pro-

perty might then remain, so that the survivor should be entirely divested of all interest therein ; on the death of either party, the survivor should retain the full right and title in his or her separate property, and the property of the deceased party be distributed according to the laws then in force. Said articles were signed and sealed by the plaintiff and said Johnson. Said Johnson left a will which, since his death, has been duly proved and admitted to record in the Probate Court of St. Louis county, Missouri. The said will is an ambiguous and complex document, and for that reason the same is set forth herein, the same being in the words and figures following, to-wit: [Here follows the will at large. The will was signed and published July 7, 1852. After reciting the ante-nuptial agreement above set forth, dated September 26, 1831, the will proceeds as follows : " And I, the said John W. Johnson, declare that after my marriage with my wife, the said Lucy Gooding, with her own full consent, I used and invested $3500 of her money erecting, as a residence for ourselves during our lives, and at her request, stating the house we lived in on Elm street was too lonesome, and in consequence I erected the two story brick building we now occupy on my own land, situated on the north side of Market street, in said city of St. Louis, and No. 155, and cost me $4600, as per my account book. I devise and bequeath to said wife Lucy, during her natural life, *and no longer*, the said building," &c. " I desire that my executor and executrix, hereinafter named, shall cause all my household and kitchen furniture (with the exception of my silver plate) to be valued and divided into three equal parts, as near as may be, and one part shall be selected by my wife Lucy, to whom such part is hereby bequeathed," &c. " The devises and bequests hereby made to my wife Lucy are intended and declared to be in full satisfaction of all and every claim, right of dower, or other demands which she may have to my estate, and on the express condition that it shall be received as such. The real estate herein mentioned and devised to my wife Lucy, during her natural life, I devise, after the said Lucy's death, to my

grandson, John E. Gleim," &c. "I direct and order, within a year after the death of my said wife, my said grandson, his heirs and assigns, to pay to the heirs or legatees of the said Lucy, the sum of $3500, money of the said Lucy, invested in erecting the said house for our residence during our lives ; but this to be paid without interest thereon ; the same to remain a charge on the said house and lot until paid, unless they can make some other satisfactory arrangements so there will be no loss in my property to the injury of my heirs." The will contained numerous particular bequests. Then follows a codicil, which it is unnecessary to set forth.] On the 12th day of September, 1854, the persons named in the said will having refused to qualify as executors thereof, the defendant, Eaton, was duly appointed by the Probate Court of St. Louis county, administrator, with the will annexed, of the said John W. Johnson, all of which will appear by a copy of said letters of administration, with the will annexed. Since the said grant of letters, said Eaton, as such administrator, has been in possession of the said real estate devised in said will, receiving rents from the tenants thereof. The other defendants in this suit accept the provisions of the will, and claim the interests respectively devised to them by said Johnson out of his said real estate ; that there never was any issue of the said marriage of the plaintiff with the said Johnson. Said Johnson, at his death, was seized of the following real estate, by title in fee simple, which is all the real estate owned by said Johnson in said county of St. Louis, and is the same which, with the improvements thereon, is devised by said Johnson to different persons, defendants in this suit. [Here follows a specification of particular tracts of land.] At the time of plaintiff's marriage with said Johnson, she was entitled to receive from the estate of her former husband, the late Capt. George Gooding, of whose administrator the said Johnson was the agent, the sum of $4801 in money, which sum of money, immediately after her marriage with said Johnson, came to his hands, to be used and managed by him as required by said mar-

riage articles. At the time of her marriage with said Johnson, she was the owner of 250 arpens of land in St. Louis county, Missouri, which was sold by said Johnson in April, 1832, plaintiff joining him in the conveyance of the said land, but only at his urgent solicitation, and against the dictates of her own judgment. The proceeds of said land, being $1000, came to the hands of said Johnson immediately after sale, to be used and managed as aforesaid, which sums of money said Johnson converted to his own use. At the time of plaintiff's marriage with said Johnson, his property before mentioned, in the city of St. Louis, was, for the greater part, wholly unimproved, and said Johnson employed the money received of the plaintiff, as before mentioned, to improve said property and render it valuable and productive of an income. The said Johnson did never keep or perform the said marriage articles on his part, but violated and broke the same in every part and parcel thereof, and did conduct himself in fraud and bad faith towards her in that behalf, as follows : Said Johnson did merely use and employ the said articles of agreement for the purpose of getting into his possession the property of the plaintiff, and did afterwards refuse, fail and neglect to comply with the said articles of agreement in every thing mentioned therein for the benefit of the plaintiff ; that he took and used and invested her money, so as to improve and enhance the value of his own estate, and render it productive of income for his own benefit, and in his own name, which income he applied not honestly and in good faith to the maintenance of himself and plaintiff during their joint lives, but mainly to the support and maintenance of himself, Miss Mary Johnson," and others, " the plaintiff, in fact, receiving nothing but her clothing, which did not exceed fifty dollars per year in value, and her board and lodging, while she was laboring and toiling assiduously for said Johnson and others, whom he made members of his family. The residue of his income, derived in common from her property and his, he invested for his own benefit, and in his own name ; that, having employed the plaintiff's means as stated, said Johnson pretended and

stated in his will he had used only $3500 of her money, which was untrue; he also pretended and stated in said will that she requested him to employ the same in erecting the house on his property on Market street, which was also untrue, and then, by the provision of said will, attempted, in violation of said marriage articles, to force her to elect to take a devise not worth $3500, not only in satisfaction thereof, but also in satisfaction of all other claims on his estate of dower or otherwise. By said marriage articles, it was the duty of said Johnson so to manage and dispose of her said property as that on his death she might presently come into possession of the same as a means of support and maintenance, whereas she says he has so employed her property as to mix it up with his own; he has denied receiving a great part of it; has diverted a large portion of the income, in which she was interested, from the purposes provided in the marriage articles, and left her, at his decease, not only without any means of living, but without any resource save to apply to the courts for her rights, where she must find witnesses to disprove his solemn denials of the truth, after the lapse of so great a time. The plaintiff is now in the sixtieth year of her age. She insists that, as said Johnson did by his said will devise to her an estate to be in full satisfaction of her dower in his estate, that he and all persons claiming under said will are estopped to deny her right to dower therein, and she prays the benefit of said estoppel. On the 8th day of December, 1854, plaintiff filed in the office of the clerk of the Probate Court of St. Louis county a declaration in writing, by which she elected to take her dower in said Johnson's estate, under the third section of the 'act concerning dower,' approved March 24, 1854, subject to debts; which declaration was acknowledged before an officer authorized to take acknowledgments of deeds in such manner as deeds are required to be acknowledged. A copy of said declaration and acknowledgment is to be annexed hereto. On the 7th of December, 1854, plaintiff made a declaration, and duly executed and acknowledged it, as in case of deeds for land, and filed it in the office

of the Court of Probate of St. Louis county, Missouri, whereby she did refuse to accept the provisions of said Johnson's will made for her. A copy of said last mentioned declaration, so acknowledged and filed on the 7th day of December, 1854, is to be hereto annexed. The plaintiff insists that, inasmuch as the said Johnson did not in good faith comply with the said articles of marriage on his part, she is not bound to comply with the same, and she claims that she is released from all obligations or duty to keep or perform the said articles, and she claims to be entitled to dower in the estate of said Johnson, notwithstanding the said articles of marriage. The plaintiff says she is deforced of her dower in the real estate of the said Johnson, and she can not have her said dower without suit, whereby she has been greatly injured and damaged. She prays that her dower may be assigned her, according to law, in the real estate of her deceased husband. She prays that for her dower there may be assigned to her the one-half of all the real estate belonging to said Johnson at the time of his decease, absolutely. She prays that she may have judgment for the damages she sustained by being deprived of her dower, and which she sets down at the sum of $10,000. She prays for such other judgment as she may be entitled to."

A demurrer to this petition having been sustained, the cause was brought to this court by writ of error.

*Glover & Richardson*, for plaintiff in error, cited Clancy on Rights, 219, 223, 226, 229 ; Statute 27 Hen. 8, ch. 10 ; Hastings v. Dickinson et al. 7 Mass. 153 ; Gibson v. Gibson et al., 10 Mass. 106 ; 2 Ala. 91 ; 8 Conn. 79 ; 2 Story's Eq. 53.

*T. T. Gantt* and *R. M. Field* and *Jones & Sherman*, for defendants in error.

I. The contract was made between J. W. Johnson and Mrs. Gooding under every circumstance of fairness and equality, and there is no impeachment of it as it was originally made.

II. The contract, in its terms, was sufficient in law to bar the plaintiff's right of dower as to all lands whereof J. W. Johnson

disposed by will. (Clancy on Rights, 220, 229; Roper on Husband and Wife, 480; Atherly on Marriage Settlements, 511; Andrews v. Andrews, 8 Conn. 79; Gelzer v. Gelzer, 1 Bailey's Eq. 387; Logan v. Phillips, 18 Mo. 22.)

III. There is no breach of the contract shown in the petition. By its terms, Mrs. Gooding was entitled to three things in respect of her separate property: 1. To have the annual income of it, under the care of J. W. Johnson, applied to their joint maintenance; 2. To have the privilege of disposing of part of it during the coverture; 3. To have the property itself at the dissolution of the marriage. The first of these she has had, as appears from her own showing. She does not deny maintenance, or aver that there was any surplus over family expenses. The second she did not seek to have during marriage, and can not of course make any complaint of obstruction in respect of it. The third she now repudiates in her eagerness now to rescind the contract, when the rescission will operate to her advantage.

IV. In 1831, the provision which the law made for a widow was precarious indeed, for her right of dower was then defeasible by a sale under execution. This consideration must be kept in view when estimating the goodness or badness of the bargain made by the parties to this marriage contract.

V. Mrs. Johnson can now have the amplest remedy, or the amplest enjoyment of the provisions of the marriage contract; and during her husband's life she was not hindered of any of her rights under that contract.

LEONARD, Judge, delivered the opinion of the court.

The ante-nuptial contract does not constitute a legal bar of dower within the provisions of our written law on this subject. No estate in things real or personal is thereby vested in the intended wife pursuant to the statute, so as to constitute it a legal jointure. The whole rests on agreement, giving the wife a right to demand the things stipulated for, but vesting in her no

estate in them within the meaning of the lawgiver. There is no reason, however, for supposing that the statute extinguishes equitable jointures ; it was not intended and can not be allowed to have that effect. The present agreement, therefore, assuming it to be such a one as a court of equity would specifically enforce, is for that reason an equitable jointure ; it bars the widow in equity, because such will be the effect when it is there enforced. If, by the terms of the agreement, the things real and personal of the wife are to remain, *in specie, her property beneficially*, notwithstanding the coverture, such an agreement, constituting of itself a complete, perfect equitable ownership, may perhaps be very well considered so far executed as to be at once, without any thing further, an equitable bar of dower, and to be pleaded as such. Where, however, the property consists in money, as in the present case, to be restored by the husband in gross on the dissolution of the marriage—or in things consumable, to be restored *in value* and not *in specie*—something more than mere agreement is necessary to complete the equitable jointure. In such a case, equity will see that the wife has the effect of the agreement before it deprives her of the provision made by law for her support. The naked agreement can not be allowed to divest her in equity of her legal rights in favor of volunteers, however it might be in regard to a purchaser who had bought the land on the faith of the wife's agreement to relinquish her dower in it.

In the present case, the plaintiff shows in her petition a legal title to dower, and then, for the purpose of procuring a decision upon what she supposes to be the defendant's case, she states the marriage contract, accompanied with averments of its non-fulfilment on the part of the husband. Upon this the defendant demurs, and thereupon the judgment of the court is in effect that this unfulfilled agreement, under the circumstances stated in the petition, constitutes of itself, without any thing further, a bar of the wife's dower in favor of mere volunteers.

We think otherwise, and therefore reverse the present judgment, and remand the cause. The defendant will then have an

opportunity of stating his own case in his own way, accompanied with a tender of the money, to be restored to the wife according to the terms of the contract and the truth of the fact. And we refrain from expressing any further opinion as to the merits of the case until the facts shall be fully developed. The judgment is reversed, and the cause remanded.