THE HOWARD SAVINGS INSTITUTION OF NEWARK, NEW JERSEY, EXECUTOR UNDER THE WILL OF C. EDWARD McKINNEY, Jr., DECEASED, PLAINTIFF, v. THE TRUSTEES OF AMHERST COLLEGE, THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, ALICE J. STEVENS, FLORENCE PEEP AND ALBERT HUGHEY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided April 14, 1960.

Mr. Archibald F. Slingerland appeared for plaintiff (Messrs. Smith, Slingerland, Trauth & Holtz, attorneys).

Mr. Irving Riker appeared for defendant Trustees of Amherst College (Messrs. Riker, Danzig, Marsh & Scherer, attorneys).

Mr. Stephen F. Lichtenstein, Deputy Attorney General, appeared for the State (Mr. David D. Furman, Attorney General, attorney).

Mr. Michael N. Chanalis appeared for defendants Alice J. Stevens, Florence Peep and Albert Hughey (Messrs. Chanalis, Lynch & Maloney, attorneys).

PINDAR, J. S. C. Plaintiff as executor under the last will and testament of C. Edward McKinney, Jr., deceased, files this complaint for construction of certain paragraphs of the said will and for instructions directing the administration of the estate respecting the provisions of paragraphs Thirtieth and Thirty-third thereof. The testator died on October 21, 1957, a resident of Essex County, New Jersey, and his will and codicil were probated on November 6, 1957 in said county with letters testamentary issued to the plaintiff, who undertook administration and continues as executor.

The pertinent paragraphs are fully set forth below:

"THIRTIETH: I give and bequeath the sum of Fifty Thousand Dollars ($50,000.) to Amherst College, an institution of learning, situate at Amherst, Massachusetts, *to be held in trust to be used as a scholarship loan fund for deserving American born, Protestant, Gentile boys of good moral repute, not given to gambling, smoking, drinking or similar acts.* (It being my thought that if a young man has enough funds to allow the waste of smoking, he certainly does not need help.) The money loaned from said fund is to be repaid to the fund at the earliest moment so that others may benefit from its use.

\*    \*    \*    \*    \*    \*    \*    \*

THIRTY-THIRD: All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind and wheresoever situate, of which I shall die seized or possessed, I give devise and bequeath unto Amherst College aforesaid *to be held on the same trusts as mentioned in paragraph Thirtieth aforesaid."* (Italics added)

Named as defendants herein are The Trustees of Amherst College (called Amherst hereafter), the Attorney General of the State of New Jersey (called State hereafter), Alice J. Stevens, Florence Peep and Albert Hughey (called Kinfolk hereafter).

Plaintiff's action has direct concern with a forced dilemmatic involution caused by an assumed interpretation on the part of Amherst under Section 6 of its charter in language as follows:

"Sec. 6. And be it further enacted, That no Instructor in said College shall ever be required by the Trustees to profess any par-

ticular religious opinions, as a test of office; and *no student shall be refused admission to, or denied any of the privileges*, honors, or degrees of said College, on account of the religious opinions he may entertain." (Italics added.)

By virtue of the aforestated provision Amherst adopted the following resolution:

"RESOLVED, that Amherst College declines to accept the legacy and the residue under the will of C. Edward McKinney, Jr., upon conditions which will prevent the use of the scholarship loan fund for the benefit of any of its students on religious grounds; but it will accept the same if it will not be so restricted in the use of the fund."

In the light of the aforementioned position Amherst by its answer seeks an adjudication that the classifying words, "Protestant" and "Gentile," be excluded as being discriminatory by statute (*N. J. S. A.* 18:25–1 *et seq.*), or as being contrary to public policy. In such event said defendant purposes that the court invoke the *cy pres* doctrine with favorable effect to award the pertinent trust bequests to Amherst to be functioned in all other respects as declared by the testator.

State as an indispensible party to a cause involving eleemosynary institutions, by its answer, joins with plaintiff for such judicial construction and direction which will best serve the public interest respecting the bequests herein.

Kinfolk by answer, likewise acceding to the necessity of judicial action as aforesaid, urge that the declination by Amherst effectuates a failure of the testamentary trust with the result that plaintiff's testator died intestate as to the questioned funds which should become their property by way of descent and distribution under *N. J. S.* 3A:4–5.

It should be noted here that at the hearing it was shown defendants Albert Hughey and Florence Peep are brother and sister and first cousins of testator, being children of a sister of testator's father; and that defendant Alice J. Stevens is a cousin once removed, being a first cousin of testator's mother. In the light of the aforesaid degree of

kindred it was stipulated that Alice J. Stevens had no statutory right to any share of the controversial trust funds.

The related diversified positions of the parties require consideration of their respective contentions in the selected order hereinafter set forth.

Initially, it will be shown that the funds in question must be regarded as a charitable trust. So classified it should not lose its manifest beneficial use. Instead, every manner for the purposive intent of the testator must be preserved. In the case of *Morristown Trust Co. v. Protestant Episcopal Church,* 1 *N. J. Super.* 418, at *page* 421 (*Ch. Div.* 1948), the court said:

"When a gift for charitable uses can no longer be administered in exact accordance with the intention of the donor, this Court has the undoubted power, under its general equity jurisdiction, to direct that the gift be administered *cy pres*—that is, as nearly as possible in conformity with the intention of the donor. [Citing cases]"

The issue of an established charitable trust was fully reviewed and determined by our Supreme Court in the case of *Wilber v. Owens,* 2 *N. J.* 167 (1949), affirming *Wilber v. Asbury Park National Bank & Trust Co.,* 142 *N. J. Eq.* 99 (*Ch.* 1948). That case involved a beneficial trust to continue and publish for popular understanding certain "researches" set forth in the manuscripts of testator. Alternative trustees were named upon certain conditions which were not acceptable. Princeton University, the last listed trustee, likewise declined but in a manner stated willingness to accept if the testamentary bequest passed to Princeton by application of the *cy pres* doctrine with permission for study use in its department of philosophy for purposes considered akin to the research of the testator. A decree to that effect was affirmed on appeal. At 2 *N. J.* 174, the court said:

"A general charitable intention is outstanding in these provisions. The design of the trust created by the tenth paragraph is the advancement of education and learning, and therefore it is a charitable trust. Trusts for the advancement of knowledge by research or otherwise are charitable."

Continuing, the court said at *page* 177:

"The trust does not fail because it is impossible or impracticable to carry out the particular charitable purpose. The judicial power of *cy pres* is invocable to effectuate the more general intention to devote the property to charitable uses. The words *'cy pres'* are Norman French meaning 'so near' or 'as near'; and the term itself suggests the limitations of the principle. *Cy pres* is 'the doctrine of nearness or approximation.' *MacKenzie v. Trustees of Presbytery of Jersey City, supra* (67 *N. J. Eq.* 652 (*E. & A.* 1905)); *Crane v. Morristown School Foundation, supra* (120 *N. J. Eq.* 583 (*E. & A.* 1936)). Where fulfillment of the specific charitable intent cannot be had, equity will in the exercise of the power apply the property to a similar charitable purpose in accordance with the more general charitable intent. This on the theory that the testator would have so ordained if he had realized that it would be impossible to carry out the particular purpose. By this process, the intention of the testator is fulfilled as nearly as it is possible to do. *Scott on Trusts, sections* 399, 399.2. We find nothing to indicate a purpose to terminate the trust here if the specific intent failed of attainment. The special intent was but a means to an end. The particular purpose was subordinate to the general charitable intention; and the decree constitutes a proper exercise of the power of *cy pres*. It falls within the general charitable intention and approaches as nearly as may be the particular purpose of the settlor.

Adopting the propriety of the application of *cy pres* the court, at *page* 178, further said:

"Where the principle is applicable, Chancery will give heed, in seeking for a charitable purpose falling within the general charitable intention, not only to the language of the trust instrument itself, but to all the circumstances tending to indicate the settlor's probable desires if he had realized that the particular purpose could not be carried out. *Restatement, Trusts, section* 399, *Comment C*. This is according to the general canon of construction. *In re Fisler*, 133 *N. J. Eq.* 421 (*E. & A.* 1943)."

▮ The primary principle as expressed by the above stated legalism is justification to conclude against any failure of the testamentary trust *sub judice* to establish a status of intestacy. Succinctly stated preservation of the beneficial trust at bar excludes the existence of any funds which could be inherited by descent or distribution. Moreover,

the testament here being construed provides no manner or form whatever of a gift over respecting the declared trust which could sustain a rightful share therein to any heir or next of kin.

A reading of the entire will and codicil, including the form and contents of a certain prior will with regard to inserted delineations therein, together with the several written memos stipulated as part of the record for the ultimate guidance of the scrivener in preparing the testament *sub judice,* clearly establishes that neither defendant, now comprising Kinfolk, was a desirable beneficiary party. Testator was unmarried. No relations between the Kinfolk parties and decedent included personal association. Other than a nominal memorial to testator's long-deceased father, his entire estate besides the pertinent trust is left to unrelated friends and associates. Accordingly, the litigated cause of action of the Kinfolk will be dismissed and the relief sought by them denied.

We succeed to the pivotal questions for determination: (a) In what manner should the court view and construe the testamentary intent of plaintiff's testator to establish a scholarship loan fund? (b) By what means did the testator intend the said fund was to function? The former has vital concern with the characterized "Protestant" and "Gentile" status of applicants for a loan. The latter comprehends the actual design under which the beneficiaries were to be entrusted.

The truism of purpose and desire of testator to afford the beneficiaries of the declared trust such privilege is not conclusively confined to the qualified secularity expressed. Insertion of the words "Protestant" and "Gentile" was not paramount for the creative intent of decedent. To apply regulation so strictly would be indeed a novel course and not in harmony with the preferred vigilance of a court exercising equitable jurisdiction, seeking to correct that in which the law by reason of its universality is deficient. Upon construction, it is most important that regard be given

to the ultimate rationale which will best serve the whole problem.

As a matter of highest significance this testator was equally, if not more so, concerned with several other qualifications of recipients. He expressed cumulative preference that they "be deserving, American boys, and of good moral repute." He specifically defines "Gambling, smoking, drinking or similar acts." Surely, sound construction should not rest only on membership in a particular religion for the indubitable reason all sects hold peculiar claim to morality.

A far more conducing reason to sustain decedent's testamentary trust can be found from the circumstances of his close regard and respect for Amherst College. He matriculated there in 1892 and graduated in 1896. It is evident he contributed to the alumni fund and attended periodic reunions. The last was in 1956, the year preceding testator's death.

There is convincing impression that testator had the highest regard for Amherst College as a seat of learning. Neither his will nor his codicil contains any provision for alternative control of the trust in the event of a failure of acceptance by Amherst. To that degree it can be reasonably interpreted that testator was completely satisfied to leave his purposeful charity singularly entrusted to the trusteeship of Amherst. That such was testator's ultimate desire is disclosed by the following.

Strong persuasion should be given to a direct reference to testator's prior will and the accompanying memos to the scrivener of the will herein. The former testament was silent about any substitution for the beneficiary scholarship fund although in the handwritten memorandum of decedent there do appear certain delineations and instruction in that respect. As to that factor it will be noticed that in making the memorandum testator had in mind another institution to succeed to this trust. Substantially quoted he expressed the alternative thus, "in case Amherst College does not care to accept the gift as offered then make the offer to

Mass. Institute of Technology—at Cambridge, Mass." Of course, if that expression could be finalized as testator's disposition of and direction for the fund under review there would be absolute need to sustain and confirm the position calling for a substituted trusteeship to receive and function the trust, but it is clear and unequivocal that the mentioned alternative choice of testator was cancelled and removed from consideration of the scrivener by the evident exclusion —the physical crossing out of the alternative thought in the memorandum. By that conduct the only reasonable adequate and logical determination is that the intention of the testator was to affirm the apparent conclusion that the disputed scholarship loan fund go to and function in the manner as ultimately expressed in the testament under review.

No instance of record indicates that the named beneficial trustee either on its part or to the knowledge of testator upheld any principle whatever toward discrimination. Amherst was shown to be non-sectarian, and the resolution of Amherst clearly belies any other disposition. Too, the record contains scant, if any, evidence indicating that decedent was especially identified with the tenets of any religion.

■ No discriminatory aspect is invoked by the use of the disputed words on the private, non-sectarian status of Amherst. It is denominated as a private institution, subject to no outside control scholastically or in any wise supervised by reason of the contribution of public money. Such factual situation excludes all valid bases for statutory regulation; that is the related private character of Amherst precludes application of our statutes, described as the "Law Against Discrimination" (*N. J. S. A.* 18:25–1 *et seq.*). *Section* 4 is descriptive of inapplicability. Likewise *subsection* 5(*j*) excludes Amherst by the following pertinent excerpt:

"Nothing herein contained shall be construed to include or apply to, *any institution*, bona fide club, or place of accommodation, *which is in its nature distinctly private.*" (Italics added.)

■ Nor is there support shown for the contention that discrimination exists in violation of a prevailing public policy where as here the charitable trust stems from testamentary means. Under long-recognized, and present, law a testator retains the right to dispose of his private estate in whatever manner and according to such terms and conditions as meet his wishes and desires, in the absence, as here, of any prescribed law to the contrary. An enlightened discussion of the element of public policy with relation to testamentary disposition of one's estate will be found in the opinion of Vice Chancellor Berry of our former Court of Chancery. In *Girard Trust Co. v. Schmitz,* 129 *N. J. Eq.* 444, at *page* 454 *(Ch.* 1941), the Vice Chancellor said:

"The meaning of the phrase 'public policy' is vague and variable. Courts have not defined it with exactness and there is no fixed rule by which to determine what acts are repugnant to it."

■ The existing inapplicability of statutory objection and the non-existence of any legal restriction for disposal of property by will warrants the conclusion that the classified words "Protestant" and "Gentile" are not discriminatory in nature or effect to render the operation of the scholarship loan fund by Amherst as impossible or impracticable. *Wilber v. Owens, supra.* Although the position of Amherst is at variance with this determination against discrimination that situation is without effect upon the conclusion hereinafter stated.

Finally, consideration will be given the long-recognized rules which govern judicial construction of wills. To that effect the construction to be adopted is that which will support a clear and convincing testamentary intent.

The unequivocal course of the doctrine of *cy pres* poses these questions: (1) What would be the preferable intent of testator if he understood that the assumed religious classification of the recipients of his trust defeated his chosen trusteeship? (2) Can it be said that in such event he would prefer his charity to succeed to another institution or trustee

not of his selection? It is believed not. Under the circumstances of this record both questions can have only one answer. It is inescapable that decedent would not adhere to the characterizations but by far prefer such solution as would preserve the manner of performance of his trust, as he had intended, for boys desiring admission to Amherst to the elimination of the words "Protestant" and "Gentile."

The case of *In re Fox' Estate*, 4 *N. J.* 587, 593 (1950), states:

"The judicial interpretive function is to find the meaning of the testator as expressed in the language used, considered in the light of the attendant circumstances, and effectuate it. *In re Fisler's Estate*, 133 *N. J. Eq.* 421 (*E. & A.* 1943)."

In the light of the foregoing, upon a finding of fact and under applicable law, it is concluded that judgment will be entered to exclude from the Thirtieth and Thirty-third paragraphs of the last will and testament of C. Edward McKinney, Jr., deceased, the words "Protestant" and "Gentile"; and that the plaintiff as executor be directed by virtue of the doctrine of *cy pres* to accordingly turn over to Amherst College the funds of the trust *sub judice* to function in all other respects as will accord with the remaining terms and conditions of said trust.

The aforesaid conclusion makes it unnecessary to decide the question of authority of the court to name a substituted trustee in a proper case.

Judgment should be presented in conformity with these conclusions.