**FIRST NATIONAL BANK OF KANSAS CITY, Executor of the Estate of William R. Jacques, Deceased, and Trustee of the Trusts created under the Last Will and Testament of William R. Jacques, Deceased, Respondent,**

v.

**Bernice Carrington JACQUES et al., Defendants-Respondents,**

**Virginia Jacques Church et al., Defendants-Appellants.**

**No. 55233.**

Supreme Court of Missouri, Division No. 2.

Sept. 13, 1971.

Robert C. Richart, Richard W. Mason, Jr., Margolin & Kirwin, Kansas City, for Virginia Jacques Church.

Douglas Stripp, Clayton R. Smalley, Clifford S. Brown, Watson, Ess, Marshall & Enggas, Kansas City, for Bernice Carrington Jacques.

George J. Winger, Madden, Willson & Winger, Kansas City, for Sheldon B. Jacques.

John C. Danforth, Atty. Gen., Wayne H. Hoecker, Asst. Atty. Gen., Jefferson City, for Attorney General.

Alvin D. Shapiro, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for John S. Ayres and another.

Jackson A. Wright, T. Richard Mager, Marvin E. Wright, Columbia, for Curators of the University of Missouri.

STOCKARD, Commissioner.

This cause involves (1) the construction of the will of William R. Jacques, deceased, and if a charitable trust was therein created whether the trust failed, and (2) the validity of an antenuptial agreement.

William . R. Jacques (hereafter referred to as the "Decedent") died on March 18, 1967, leaving a will which, as amended by codicils, in the parts here material provided as follows:

"ITEM XI—All the rest, residue and remainder of my property and estate, real, personal, and mixed, of whatever kind and wheresoever situated, of which I

shall die seized or possessed, or of which I shall be entitled to dispose at the time of my death, I give, devise, and bequeath to the FIRST NATIONAL BANK OF KANSAS CITY, a National banking association having its principal office in Kansas City, Missouri, IN TRUST, NEVERTHELESS; The Trustee shall divide the principal of the trust as it is then constituted into two equal shares, one share for my son, WILLIAM HORTON JACQUES, and one share for my son, SHELDON BARLOW JACQUES. Each share so created for each of my sons shall be held as a separate trust by the Trustee, and the Trustee shall manage, invest, and reinvest the same, collect the income, and pay over the net income in quarterly or more frequent installments to the son for whom the share was created, during his life. [In this opinion we refer to these two trusts as the "first trusts"]. Upon the death of each son, the remainder of the principal of each trust created for that son shall after payment of the gifts, if any, provided in Items IV, V, and X, be paid over, free from this present trust, by the Trustee to the BOARD OF TRUSTEES OF THE UNIVERSITY OF KANSAS CITY, Kansas City, Missouri, to be added to their scholarship aid funds, the income to be disbursed by grants or by loans to students of the undergraduate, graduate, or post-graduate departments of said university [this trust shall be referred to as the "second trust"], but my Trustee shall not be obligated to see to the application of any funds so paid to said university."

The First National Bank of Kansas City (hereafter referred to as "Trustee") is the acting executor of the estate of the Decedent and the trustee of the first trusts created by the will.

The Board of Trustees of the University of Kansas City is an unincorporated association, the individual members of which are appellants herein, which was the governing body of that university. On July 25, 1963 the physical property of the University of Kansas City was transferred to the Curators of the University of Missouri (hereafter referred to as the "Curators"), appellants herein, a public corporation organized under the laws of Missouri, who have thereafter operated an educational institution known as the University of Missouri-Kansas City using substantially the same real and personal property as did the University of Kansas City.

Sheldon B. Jacques is the sole surviving child of Decedent, and Virginia Jacques Church is the sole surviving descendant of William Horton Jacques, the only other child of Decedent and who predeceased his father. Both Sheldon and Virginia are appellants, but only as to that part of the judgment which held void the antenuptial agreement between the Decedent and Bernice Carrington Jacques, the Decedent's second wife and surviving spouse.

John C. Danforth is the Attorney General of the State of Missouri and is a necessary litigant representing the public in the enforcement of the alleged charitable trust.

We shall first rule the issues pertaining to the construction of the will, and whether the second trust constitutes a charitable trust.

The trustee filed suit seeking the construction of several provisions of the will of Decedent, but the only construction sought that is material to the issues on this appeal is whether distribution of the principal of the first trusts, when called for, should be made to "the Board of Trustees of the University of Kansas City, the Curators of the University of Missouri (such assets to be used at the University of Missouri at Kansas City—formerly the University of Kansas City) or the intestate heirs-at-law of William R. Jacques." The trial court sustained a motion for summary judgment and thereby ruled that the bequest under Item XI of Decedent's will to the Board of Trustees of the University of Kansas City had lapsed, and that the prin-

cipal of the first trusts should be distributed eventually to the heirs at law of the Decedent.

■■■ While the will does not in express terms designate the Board of Trustees of the University of Kansas City as trustee of the fund for the benefit of the class of persons named, the result is that by inference it was to be the trustee. See Ramsey v. City of Brookfield, Mo., 237 S. W.2d 143. None of the parties now contend otherwise. We consider it unimportant whether the Board of Trustees of the University of Kansas City, an association of individuals, continues to exist as a board. Neither that Board nor the University of Kansas City was designated as the beneficiary of the trust, and an otherwise valid trust will not be permitted to fail for want of a trustee. Rawlings v. Rawlings, 332 Mo. 503, 58 S.W.2d 735; 90 C.J.S. Trusts § 211. The essential question is whether the purpose of the trust is charitable, and in determining this issue we consider "the whole instrument in the light of all the circumstances," Thatcher v. Lewis, 335 Mo. 1130, 76 S.W.2d 677, to find whether there was a "general charitable intent." Ramsey v. City of Brookfield, Mo., supra.

The Decedent first directed that his debts and funeral expenses be paid. He then made specific bequests to his spouse, his son, daughters-in-law, granddaughter, the grandchildren of his spouse by a prior marriage, his sister, his secretary, and the Salvation Army. Each son was given a life estate in one half of the residue of the estate, and the remainder of the residuary estate was bequeathed to the Board of Trustees of the University of Kansas City, in trust, for the purposes previously set forth. When the will in its entirety is considered, it is clear that the Decedent intended to dispose of his entire estate by the provisions in his will, and he did not intend that any of his estate be subject to intestate disposition. Unless circumstances prevent it, that intention should be carried out.

■■ As previously noted, the University of Kansas City was not the beneficiary of the trust created by the will. The beneficiaries were "students of the undergraduate, graduate, or postgraduate departments of said university" who were to receive "grants or loans" payable from the income of the trust property. The purpose of the trust was to furnish financial assistance to students in obtaining an education, and a trust for the advancement of education is universally recognized to be of a charitable nature. Restatement, Trusts § 370; 15 Am.Jur.2d Charities § 68; Quinn v. Peoples Trust & Savings Co., 223 Ind. 317, 60 N.E.2d 281, 157 A.L.R. 885. Also, "A trust to assist needy students in acquiring a college education is recognized as one for a charitable purpose," 15 Am.Jur.2d, Charities § 69, even though the assistance is by way of a loan which must be repaid. Howard Savings Institution of Newark v. Trustees of Amherst College, 61 N.J.Super. 119, 160 A.2d 177; In re Pierce's Estate, 245 Iowa 22, 60 N.W.2d 894; Annotation, 33 A.L.R.2d 1183. It is not essential that the beneficiaries of a charitable trust be ascertainable in advance of receiving the benefits of the trust nor that the specific individuals be ascertainable from the language of the trust instrument. " 'The law benignly aids a charitable use by recognizing that in a public charity uncertainty as to the individuals whom the benefit may reach is one of its essential features.' " Ramsey v. City of Brookfield, Mo., supra; Restatement, Trusts § 364. We conclude that if the University of Kansas City had continued in existence, there was created by Decedent's will a valid charitable trust for the purpose of assisting students to obtain an education at that institution.

The question remaining is whether the otherwise valid charitable trust must fail because it was the intent of the Decedent that the purposes of the trust was to assist students attending the University of Kansas City, and not students attending the University of Missouri-Kansas City, even though substantially the same course of

study is offered, the same physical properties are utilized, and the only substantial difference is that the educational institution is now a part of a university owned and operated by the State, and not a private educational institution.

We do not consider the language of the will concerning the second trust to be ambiguous. It evidences an intent to apply the trust funds to "a continuing problem," Thatcher v. Lewis, supra, that is, the need of students in the Kansas City area for financial aid to attend college. But, we find nothing which compels us to conclude that it was the intent of the Decedent that the income from the funds of the second trust be used for the above stated purpose only when the students attended an institution in the Kansas City area by the name of The University of Kansas City. When the income from the second trust is made available to supply financial aid to students attending an educational institution in the Kansas City area which uses the same facilities and which teaches substantially the same courses as the University of Kansas City, the intent of the Decedent will be carried out, even though the name of the institution has been changed and the management of the institution has been changed from the Board of Trustees to the Curators. There was no change in the overall objectives of the institution nor in the means or facilities in carrying out those objectives.

■ Charitable trusts, of which the bequest to the Board of Trustees of the University of Kansas City for the purposes set forth in the will is clearly one, "are the favorites of equity," Burrier v. Jones, Mo., 92 S.W.2d 885, and although no general rule can be enunciated which is applicable to every case, the cy pres doctrine may be applied "to permit the main purpose of the donor of a charitable trust to be carried out as nearly as possible where it cannot be done to the letter," Thatcher v. Lewis, supra, 76 S.W.2d at p. 682, and the courts

will strive to uphold the validity of a charitable trust within the general intent of the donor. Hood v. St. Louis Union Trust Co., 334 Mo. 404, 66 S.W.2d 837. As stated in Scott, Trusts, 3d Ed., § 397.3, "where a testator devises or bequeaths property to a charitable corporation to be applied to a particular charitable purpose, it is to be inferred that the application of the property to the designated purpose is the testator's primary intention, and that the choice of the organization to make the application is secondary." See also Restatement, Trusts, 2d Ed., § 399, p. 297.

Now that the educational institution formerly known as The University of Kansas City is being operated for the same general purposes by the Curators, we are of the opinion that they are the proper entity through which the general charitable intent of the Decedent can and should be carried out subject only to the limitation that the benefits of the trust should be available only to "students of the undergraduate, graduate, or post-graduate departments" of the University of Missouri-Kansas City.

■ Respondents rely primarily on Curators of University of Missouri v. University of Kansas City, Mo., 442 S.W.2d 66. In that case the donor established two trust funds, and the income was to be used for student loans, and to establish a teaching chair, preferably in the field of music. However, it was further provided in that will that "If the University of Kansas City should cease to exist," then the two funds should go to Park College for the same purposes. The substance of the holding in that case was that within the meaning of the will, the University of Kansas City had ceased to exist, and that when there was an express intention on the part of the testator that in such event the bequest should go to Park College, that intent should be carried out. In this case, however, there was no gift over, and the cy pres doctrine is applicable in order to carry into effect

the intention of the Decedent as nearly as may be done. Thatcher v. Lewis, supra, 76 S.W.2d at p. 682.

We turn now to the issue of whether the antenuptial agreement was void *ab initio* as held by the trial court.

On June 13, 1950, Decedent and Bernice Carrington entered into a contract in contemplation of marriage. It was therein recited that Decedent was 70 years of age and possessed of an estate then having a market value of approximately $100,000; that Bernice Carrington was over 60 years of age and possessed of an estate then having a market value of approximately $350,000; that it was the desire of the parties that after marriage their respective estates should remain separate and distinct and free of the claims of the other, except as therein provided. Each party then expressly waived, released and quitclaimed to the other all right, title and interest, including dower, that he or she might acquire as husband or wife by reason of the marriage under the existing or future law of the States of Illinois, Missouri, or Kansas, or any other state. The parties agreed to make, execute and deliver to each other deeds waiving, releasing and quitclaiming to the other all such interests. The agreement also contained a provision that Decedent agreed to make a will "in accordance with his wishes and desires and the settlement and determination of the parties' respective property rights as set forth herein," but which should provide that if his wife survived him as his widow and her separate estate at the time of his death had a market value of less than $15,000, then she should receive a life estate in all his real and personal property.

There is no contention that the antenuptial agreement was not fair and equitable as between the parties thereto. The sole contention is that the agreement is "invalid in that it failed to provide an estate by way of jointure" as required by § 469.160, RSMo 1949, in effect at the time of the execution of the contract, but repealed in 1955, which was before the death of testator. The material part of § 469.160 was as follows:

"If any woman prior to and in contemplation of marriage, shall, in agreement or marriage contract with her intended husband, or other person, receive any estate, either real or personal, to take effect after the death of her husband, by way of jointure, as a provision for her support during life, and expressed to be in full discharge of all her claim of dower, such estate shall be valid, and a bar to dower in the estate of her husband."

As noted, the above statute referred only to dower, and no other marital rights of the widow. However, dower was abolished in this State in 1955, § 474.110, RSMo 1969, V.A.M.S., and the surviving spouse was designated an heir, § 472.010, RSMo 1969, V.A.M.S., and given certain other statutory allowances, § 474.250, RSMo 1969, V.A.M.S. The above § 469.160 was repealed in 1955, and there was then enacted § 474.120 which was comparable to the former § 469.160 except it applied to both husband and wife, and made no reference to jointure, as such, but did refer to an estate for support during life. However, that statute was repealed in 1963, which was before the death of Decedent, and the present § 474.120, was enacted which provides as follows:

"The rights of inheritance or any other statutory rights of a surviving spouse of a decedent who dies intestate shall be deemed to have been waived if prior to, or after, the marriage such intended spouse or spouse by a written contract did agree to waive such rights, after full disclosure of the nature and extent thereof, including the nature and extent of all property interests of the parties, and if the thing or promise given to the waiving party is a fair consideration under all the circumstances."

We note that this statute purports to affect only the rights of inheritance or other

statutory rights of a surviving spouse of a decedent who dies intestate. Presumably a will would be expected to take into consideration the terms of an antenuptial agreement, and if a surviving spouse successfully renounced the will, as to that spouse the deceased would die intestate. It is clear, however, that the public policy of this State, as reflected by § 469.160, which was in effect in 1950 but was repealed in 1955, is not now the legislatively declared public policy. Instead, an antenuptial agreement to release the inheritance and other statutory rights of a surviving spouse need only comply with § 469.160, RSMo 1949.

The effect of these statutory changes which occurred after the execution of the antenuptial agreement in this case but prior to the death of Decedent is not readily or easily ascertainable, but in any event we are of the opinion that for two reasons the trial court was in error in its ruling that the agreement was void *ab initio* and was ineffective to bar the surviving spouse from claiming the existing inheritance and other statutory rights.

■ The agreement was not rendered totally void because it did not meet the requirements of § 469.160, RSMo 1949. At most, because of an announced public policy, it was ineffective to constitute a waiver of dower. However, the agreement was not limited to a release of dower only. It provided that "Bernice hereby waives, releases and quitclaims to William all right, title and interest, including dower, that she may have acquired as his wife, widow or otherwise, upon and by reason of the marriage of the parties hereto and that she may acquire after such marriage under any present or future law of the * * * State of Missouri * * * in and to any and all property and estate, legal and equitable, real, personal and mixed of William, whether now owned or hereafter acquired by him, and wheresoever situated." At the time of the death of Deceased, which was the time the agreement became operative in the respects now in issue, the public policy of this State, by reason of the "future

law" referred to in the agreement, did not result in the agreement being inoperative to constitute a waiver of her "rights of inheritance" and other "statutory rights of a surviving spouse" if the agreement met the minimum requirements of § 474.120, RSMo 1969, V.A.M.S., and there is no contention that it does not. We conclude that Bernice Carrington Jacques, as the surviving spouse of Decedent, is barred by reason of the antenuptial agreement from claiming inheritance and other statutory rights.

However, assuming that we must determine whether § 469.160, RSMo 1949 governs the validity of the agreement, we are of the opinion that there existed an equitable *jointure*, which would authorize a release of dower, and for equitable reasons also a release of the statutory rights of a surviving spouse now provided for in lieu of dower.

The object of dower at common law was to furnish means and sustenance for the surviving widow and minor children after the death of the husband and father. For that reason it was carefully guarded against invasion. 28 C.J.S. Dower § 6. However, at common law dower could be waived by a woman contemplating marriage by providing for her a jointure which was a competent livelihood by way of a freehold estate to take effect in possession or profit after the death of the husband for her life. 28 C.J.S. Dower § 54. Where the requirements for a jointure are set forth by statute those requirements ordinarily must be met except when there exists an equitable jointure. "While an equitable jointure does not require all the particularities of a jointure at law, it is essential, in order that it bar dower, that it be made before marriage, that there be a reasonable and certain provision for the wife, to take effect in possession or profit immediately on the death of the husband, and to continue during the life of the widow, unless the intended wife is of age and a party to the deed and consents to accept a less advantageous provision in lieu of dower, and that the parties intended that

the provision should be in lieu of dower." 28 C.J.S. Dower § 54. In Logan v. Phillips, 18 Mo. 22, decided in 1853, this court recognized that the statute then in effect, which was the same as § 469.160, RSMo 1949, did not preclude an equitable jointure, and it was said: "When a contract was made by a woman of full age before marriage, by which, for a sufficient consideration, she relinquished her right of dower in her future husband's real estate, it was sustained by courts of equity. Being *sui juris*, and free from the control of any one, it was not perceived why her contracts should not be binding as well as those of all other adults." In Johnson v. Johnson's Administrator, 23 Mo. 561, decided in 1856, this court again recognized that "There is no reason, however, for supposing that the statute extinguishes equitable jointures; [and that] it was not intended and cannot be allowed to have that effect." The principle of equitable joinder was also recognized in King v. King, 184 Mo. 99, 82 S.W. 101; and Farris v. Coleman, 103 Mo. 352, 15 S.W. 767. The requirement for an equitable joinder is that there be adequate or sufficient consideration for the agreement. This does not mean that it must meet the requirements for a legal joinder.

At the time the antenuptial agreement was entered into, under the law of this State, a widower had the same rights in a deceased's wife's property as a widow had in the real property of her deceased husband, that is, the estate of dower, with possibly a limitation to only that real estate of which the wife died seized. The record does not reveal what proportion of the $350,000 estate of Bernice Carrington or of the $100,000 estate of Decedent was real estate, but each was comprised of some real estate. In any event, the mutual releases of dower constituted valuable consideration. The parties recognized that in the absence of some unforeseen circumstance, Bernice Carrington did not need financial assistance from the Deceased to sustain her after his death. However, the parties carefully provided for that unforeseen circumstance. Bernice Carrington was a mature woman of substantial means. There is no contention whatever that she was overreached, that there was not a full and complete disclosure on the part of the Deceased, or that she was not fully and adequately advised of her rights and the consequences of her act in executing the agreement. For aught that appears from the record, she never expected or sought to receive the statutory rights of inheritance and other statutory rights until after the death of her husband when there was discovered the fact that the agreement failed to meet the strict statutory requirements for a legal jointure which were in effect at the time of the execution of the agreement.

When we take into consideration the ages of the parties, the comparative value of each estate, the provision made for the widow in the event her estate was substantially diminished at the death of her husband, and that the agreement was supported by adequate consideration, we conclude that in equity the agreement should be enforced, and that it therefore constituted an equitable jointure. For the same result in comparable situations, see Gelzer v. Gelzer, 1 S.Car.Eq. (Bailey) 387; Barth v. Lines, 118 Ill. 374, 7 N.E. 679; and Rieger v. Schaible, 81 Neb. 33, 115 N.W. 560.

The judgment is reversed and the cause remanded with directions to enter a new judgment in conformity with the views here set forth.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

MORGAN, P. J., DONNELLY, J., and HENLEY, Alternate Judge, concur.

FINCH, J., not sitting.