The FIRST NATIONAL BANK OF KANSAS CITY, Trustee under the Will of R. Harry Jones, Deceased, Plaintiff-Respondent,

v.

M. D. STEVENSON et al., Trustees of Independence Boulevard Christian Church of Kansas City, Missouri; The National Benevolent Association of the Christian Church; United Christian Missionary Society; E. H. Norrington et al., Trustees of Christian Church Commission of the Kansas City Area; The Unknown Heirs, Next of Kin, Successors, Consorts, Grantees, or Assigns of R. Harry Jones, Deceased, Defendants-Respondents,

Ernest T. Shepherd, Clifford C. Jones, Florence Jones Tilt (Edwin E. Tilt, Executor of her estate), and Frances Jones Souther (Miller), Defendants-Appellants.

No. 45175.

Supreme Court of Missouri.
Division No. 1.

July 9, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 10, 1956.

---

Gordon Miller, White Plains, N. Y., John G. Madden, Charles T. Rafter, Jr., Kansas City, for defendants-appellants.

W. Hugh McLaughlin, Kansas City, for M. D. Stevenson and others, Trustees of Independence Boulevard Christian Church of Kansas City, defendants-respondents. Cisel, Benton & McLaughlin, Kansas City, of counsel.

Wade D. Rubick, Kansas City, for National Benevolent Ass'n of Christian Church, United Christian Missionary Society; E. H. Norrington and others, Trustees of Christian Church Commission of Kansas City Area, defendants-respondents.

Charles M. Blackmar, Charles B. Blackmar, Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, for respondent First Nat. Bank of Kansas City.

HOLMAN, Commissioner.

Plaintiff, as trustee under the will of R. Harry Jones, deceased, instituted this action to obtain a construction of that will. The defendants are the primary and contingent beneficiaries of the trust established by the terms of said will and the heirs at law of said R. Harry Jones, deceased. Generally speaking, the trustee has taken a neutral attitude and the real controversy is between the beneficiaries of the trust on one side and the heirs at law of said decedent on the other. The decree of the chancellor was in favor of the beneficiaries and adjudicated that the heirs had no present or future interest in the trust. From this decree the heirs have duly appealed.

The facts appear in an agreed statement and from certain evidence offered by plaintiff and the beneficiaries. The will in question was dated October 1, 1940, and attached thereto were two codicils, one dated February 7, 1941, and the other June 23, 1941. Mr. Jones, a resident of Jackson County, died on November 30, 1941. The said will and codicils were duly admitted to probate in the Probate Court of Jackson County, Missouri. The plaintiff was named as executor as well as trustee in said will. In due time, final settlement was made in the estate and the executor delivered the assets to the trustee as provided in said will. The principal assets in the estate were municipal and state bonds, some corporate bonds and a large amount of various common stocks. The appraised value of the estate was about $142,000. The assets in the trust estate at the time of trial had a market value of approximately $200,000.

The will, after providing for the payment of debts and burial expense, gave and bequeathed all the residue to plaintiff, in trust. The trustee was directed to immediately pay certain benefits (in the nature of legacies) to testator's only brother and to certain nieces and nephews (including all of appellant heirs) which ranged in amount from $500 to $3,000. Following these bequests is this provision which will hereinafter appear significant: "(8) If any of the beneficiaries hereinbefore named * * * do not survive me, such bequests become void and are not payable to the heirs at law of the deceased." Thereafter, other comparatively small benefits were ordered to be paid to various other individuals and institutions. It may be noted that all of the benefits in the nature of legacies (including those to relatives) totaled less than $15,000.

The primary purpose of the trust appears in the following provisions of the will and codicils:

"Item IV. I direct that the remaining portion of my estate, both in real and personal property, shall be distributed for the sustaining of the Independence Boulevard Christian Church and Bible School, to encourage its membership but not to lighten its responsibility; to be a blessing to gen-

erations to come, as it has been in the past, in its ministrations as a Church and Bible School. The trustee shall pay to the Independence Boulevard Christian Church, or its successor in faith, located at Independence and Gladstone Boulevards, the sum of Three Hundred Dollars ($300.00) per month, out of income first, but any deficiency to be paid out of principal, with the acknowledgment of the Church that this bequest is received and applied as follows for the month:

"For the ministry of music, one hundred dollars ($100.00); for janitor service, one hundred dollars ($100.00); for building repairs and furnishings, seventy-five dollars ($75.00); for flowers, shrubs, trees surrounding the Church and Bible School buildings, ten dollars ($10.00); for my monthly contributions to Missions, fifteen dollars ($15.00); or a total of three hundred dollars ($300.00) monthly.

"From the residue set apart for the church, the trustee is authorized upon application of the trustees of the church and an examination of facts, to allow a sum not exceeding two thousand dollars ($2,000.00) in the year 1944 (nineteen forty-four) for capital construction, repair or furnishings of the property. It is my desire that no mortgage be placed on the property of the church at any time, and in the event of the disregard of this wish, the trustee is empowered, with discretion, to suspend or annul my bequests. The trustee shall inquire yearly of the church trustees that the property has been protected against insurable risks, and no mortgage thereon.

\*　　\*　　\*　　\*　　\*　　\*

"Item VI. I heartily favor the union of Christians, faiths held apart by denominational lines. Therefore, I permit and encourage the unity with the Independence Boulevard Christian Church, at its present location, of any congregation or congregations of Evangelical belief where a happy blending for a high purpose could be promoted by this endowment.

"Item VII. Should the annual payments under this, my will, become greater than one-half of the total income of the Independence Boulevard Christian Church, it is my belief that the means should be more effectively used. In such future eventuality, and if for any cause the active ministrations of the Independence Boulevard Christian Church and Bible School should cease, I direct that the residue of my estate be divided equally between the United Christian Missionary Society of the Disciples or Christian Church, located at Indianapolis, Indiana, for the Foreign Department, and the National Benevolent Association of the Disciples or Christian Church, located at St. Louis, Missouri.

"Purposely, in this will I have made no mention of preaching expense, believing that item should be fixed by the financial ability of the congregation. What I have attempted in this instrument is in gratitude to the Independence Boulevard Christian Church and its loyal members for the influence on the lives of my wife and myself, and it is my hope that other than my bequest will join in undergirding the blessing of this church far into the future.

\*　　\*　　\*　　\*　　\*　　\*

"Codicil No. 2. Under Item *VII.* Having in mind to establish the church on a financially sound basis, if the provisions against mortgaging the property, and the failure of contributions do not safeguard the church's future, I have designated the United Christian Missionary Foreign Society and the National Benevolent Association, as beneficiaries. I now enlarge this group of two by adding the City Mission Board of Kansas City, Missouri, which three agencies of the Disciples Church shall each be paid an equal amount, namely, one hundred dollars ($100.00) per month. Furthermore, under Item VII, if, sixty (60) days after my death, one Harry L. Ice is employed as pastor, or in any other capacity by the Independence Boulevard Christian Church, then all payments

to said church shall be void and stopped, and the payments be transferred equally to the United Christian Foreign Missionary Society of Indianapolis; to the City Mission Board of Disciples Churches of Kansas City, Mo., and the National Benevolent Association of St. Louis, Mo. After giving effect to this codicil, other provisions of my will are unchanged. Subscribed this June 23, 1941."

Since receipt of the trust assets, the trustee has regularly paid to the trustees of the Independence Boulevard Christian Church, the sum of $300 per month. The trust income, however, has been more than twice that amount and the additional income has been invested in U. S. Government bonds. At the time of filing this suit, that fund amounted to more than $31,-500. This suit was filed by the trustee as a result of the demand of the trustees of the church that the church should receive all of the income of the trust. It is the contention of the appellants that only $300 per month is to be paid to the church and that the excess corpus and income should revert as upon intestacy and be distributed to the heirs of decedent.

It appears from the testimony that the Independence Boulevard Christian Church, at trial time, had about 2,000 members. The average attendance at Sunday School was from 800 to 1,000. The general budget for the church was about $69,000 per year with a separate budget (amount undisclosed) for the Bible School. The chairman of the house committee and other witnesses related the need for additional money for various repairs, additions, replacements, and improvements to the church properties.

It was further shown that Mr. Jones had a vital, consuming interest in the church. Most of his time was devoted to its activities. He was a member of the Board of Elders and was chairman of the house committee. He was intensely interested in the music of the church. His general loyalty and interest is effectively described in the following testimony of Mrs. Manard: "Q. Tell Judge James very briefly the interest of Mr. Jones in the church. A. Judge, I believe I can honestly say that of all the men in the church I have ever known, Mr. Jones' interest was the keenest and always shown in every way one could have thought of. Q. Was his attendance regular? A. Very regular. The weather made no difference about Mr. Jones' attendance, his health made no difference unless he was absolutely incapacitated. I have never seen a man in all my experience in the church who was so wholeheartedly devoted to Independence Boulevard Christian Church as Mr. Jones. He would not only attend the day service but the evening service every Sunday. We have often said that Mr. Jones was there every time the doors were opened, and sometimes we thought that he carried a key and came in with it when he couldn't get in otherwise."

It was agreed that Harry L. Ice had not been employed by the church in any capacity and that since November 30, 1941, all property of the church had been free of all mortgages and had been adequately protected by fire and comprehensive insurance.

The trial court gave certain requested Findings of Fact and Conclusions of Law, one of which will be hereafter referred to and discussed. The decree specified the finding of the court that "R. Harry Jones, by his last will and testament and codicils thereto, intended to bequeath all of his estate to plaintiff as trustee, and intended that the entire trust estate, after payment of specific bequests, should stand for the benefit of the Independence Boulevard Christian Church, acting through its trustees, subject to the contingencies contained in Item VII of the will and in the second codicil thereto. It was not the intent of R. Harry Jones that the defendants Jones, Tilt, Miller, and Shepherd [appellants] have any interest in the trust under his will other than the specific bequests specified in paragraphs (2),

(3), (4) and (5) of Item II of his will, which specific bequests have been paid in full. * * * It was the intent of R. Harry Jones that income from the trust in excess of three hundred dollars per month be available to the trustees of the Independence Boulevard Christian Church for the sustaining of the Independence Boulevard Christian Church and Bible School, for purposes other than the ministry of music, janitor service, building repairs and furnishings, flowers, shrubs and trees, and missions, for which specific provision is made, and other than preaching expense, which is specifically excluded as an expense to be borne by the trust. * * * Trustees of the Independence Boulevard Christian Church have shown actual needs for church purposes which may properly be paid out of the accumulated excess income of the trust." It was then adjudged that, upon approval by the court, the excess income be made available to the church for purposes other than those heretofore specified. The court retained jurisdiction for the purpose of thereafter hearing and determining applications for attorneys' fees.

As indicated, appellants contend that the charge upon the income of this trust is specifically limited to $300 per month and that the testator knew at the time of creating the trust that the income would double the amount of the charge. In this situation, it is contended that the excess corpus and income are, as a matter of law, declared as undisposed of in the nature of intestacy and a resulting trust will arise in favor of the heirs at law in the absence of an indication of a general charitable intent permitting the application of the funds to other charitable purposes under the cy pres doctrine. Cited in support of this rule are Holmes v. Welch, 314 Mass. 106, 49 N.E.2d 461, 157 A.L.R. 896; Bragg v. Litchfield, 212 Mass. 148, 98 N.E. 673; Security Trust Co. v. Willett, 33 Del.Ch. 544, 97 A.2d 112. While we think the instant case may be distinguished from each of these cases upon the facts, the conclusion we have reached herein makes it unnecessary for us to approve or disapprove the rule for which appellants contend.

Respondent beneficiaries contend that testator made a clear disposition of all his property in trust, the remainder and major portion thereof being for the exclusive benefit of the primary and contingent beneficiaries therein designated; that this general intent is not defeated by directions to pay a designated minimum amount for specified purposes, and that while it is not necessary to apply the cy pres doctrine in the present situation, such would be properly applied, if necessary, in order to prevent partial intestacy.

In seeking a determination of the vital question presented, it may be helpful to review certain well-settled rules that are often applied in the construction of wills. "The prime rule of construction is that the court, without attempting to make a new will or an equitable distribution of the estate, must confine its endeavors to ascertaining the real intent of the testator. To this end the will must be read from its four corners and effect given to all its plain provisions, provided, of course, they are not in violation of law. If there is doubt as to the proper construction of the will, after its own provisions and language are fully considered, then the court has the right, in aid of construction or interpretation, to consider the circumstances surrounding the testator at the time of making it." First Trust Co. v. Myers, 351 Mo. 899, 174 S.W.2d 378, 380. In determining this intent the court should place itself as nearly as possible in the position of the testator. We must ascertain this intent, if possible, even though there may be repugnancy in some of the provisions and regardless of the difficulty that may be encountered in determining same. "If a literal construction of a particular clause would render it a discord in the whole will, we should not give it that construction if it is reasonably susceptible of another that would bring it into harmony. * * * When a man makes a will that is fairly susceptible of

being construed into a testamentary disposal of his whole estate, it will be so construed, in preference to construing it to be a case of partial intestacy." Meiners v. Meiners, 179 Mo. 614, 625, 626, 78 S.W. 795, 796.

██ In a legal sense, the testamentary trust created in the instant will comes within the general definition and classification of charitable trusts. It is generally recognized that charitable trusts are favorites of equity and "are construed as valid and given effect wherever possible, by applying the most liberal rules of which the nature of the case admits, and are often upheld where private trusts would fail." 14 C.J.S., Charities, § 6, p. 428.

An examination of the will before us will disclose certain facts relating to the intentions of testator about which there would appear to be no question. It is obvious that it was not his intention to substantially provide for his legal heirs or other relatives. This appears from the fact that benefits to persons in this class totaled less than five per cent of the appraised value of the estate and none of these relatives were made contingent beneficiaries; nor do we find any provision to the effect that the trust fund would ever revert to the heirs of the testator in the event the trust purposes should wholly or partially fail. Moreover, we must conclude that the testator did not intend that any of his estate should go to any heirs more distant in relationship than those named in the will, as he specifically stated that even the small benefits he provided ·for his blood relatives would become void if said beneficiaries did not survive him and that such bequests were not payable to their heirs. It should .be noted that two of the six such benefi- ·ciaries named have already died. In considering the question of testator's intent, we may here observe that the construction for which appellants contend would provide for the payment of substantial benefits to heirs which testator sought to preclude from possible participation in the small benefits he provided for his relatives.

In further considering the instant will, we must also conclude that testator was a very religious man with a keen general interest in the various organizations sponsored by the Disciples of Christ or Christian Church. However, his paramount religious interest was and had long been focused on the Independence Boulevard Christian Church. One cannot read this will without concluding that testator's primary intent and concern was to make wise and generous provision for the future financial welfare of that church. Note the following excerpts from the will: "I direct that the remaining portion of my estate, both in real and personal property, shall be distributed for the sustaining of the Independence Boulevard Christian Church and Bible School * * *. From the residue set apart for the Church * * *. It is my hope that other than my bequest will join in undergirding the blessing of this church far into the future. * * * Having in mind to establish the church on a financially sound basis * * *."

██ To summarize our consideration of the will, and to some extent the relevant evidence, we conclude and hold as follows: (1) That all of testator's estate was devised and bequeathed to plaintiff in trust, (2) that testator did not intend that his heirs should ever receive any of the estate or benefits from the trust estate other than the specific amounts provided for designated relatives, and (3) that the Independence Boulevard Christian Church, as primary beneficiary, should receive the entire income from the remaining trust corpus unless disqualified under one of the three provisions set out in the will.

It is true that the testator provided that the trustee pay $300 per month to the church, and he further designated that the amount be apportioned in a specified manner to the payment of certain church expenses. We do not think the provision for

this monthly payment was intended as a positive limitation upon the extent of the benefits to be paid the church. There are many other reasons why the testator may have desired to specify a definite amount. It is entirely possible he contemplated that over a period of years the trust assets might not produce income of more than that amount. It is clear that he considered it possible that at times the income would not be that much, as he provided that, if necessary, principal could be used to make the payment. It also appears that he desired to make certain that funds be provided for various items of church expense in connection with matters in which testator had a particular interest. As stated, he wanted these expenses paid even though it might be necessary to use some of the trust corpus in order to provide the necessary amount. The fact that testator made definite and certain provision for the payment of a total amount each month in order to provide for these various items is not inconsistent with the apparent general intent that all of the trust assets were placed in trust for the benefit of the primary and contingent beneficiaries.

In considering the question of testamentary intent, we have noted the conflict in the provisions for the contingent beneficiaries. In Item VII, it is provided that if certain events occur the residue of the estate (apparently the entire trust corpus) be divided between the two organizations therein named. In the second codicil, a third contingent beneficiary is named and it is stated that each of the three agencies receive $100 per month. We need not resolve this conflict. We mention it because we recognize that the provision for the payment to these agencies of $300 per month (rather than the entire income) may appear inconsistent with our interpretation of the provision for the payment of that amount to the church. The provision in the codicil may be reconciled with our view of the provision for the church upon the theory that he wanted to provide a minimum amount for these three agencies, even though it might require use of the trust corpus. However, even if we assume that the provision in the codicil may not be reconciled with our view of the intent in specifying the monthly provision for the church, the inference to be drawn therefrom is not strong enough to overcome the intent we find from the whole instrument that the entire income of the trust is to be used for the benefit of the church and thereafter, in the event certain contingencies occur, for the other agencies named.

At the request of appellants the trial court gave the following Conclusion of Law, "that the cy pres doctrine does not apply in the instant case." In view of that conclusion we should make it clear that we find a general charitable intent to cause the income from the trust assets to be devoted to the benefit of organizations sponsored by the Disciples of Christ. Ramsey v. City of Brookfield, 361 Mo. 857, 862, 237 S.W.2d 143, 145; Thatcher v. Lewis, 335 Mo. 1130, 1145, 76 S.W.2d 677, 683. The construction placed upon the will makes it unnecessary under the instant facts to apply the cy pres doctrine. However, the factual situation does not exclude the future application of the doctrine in a proper action required by changing circumstances.

All of the parties requested the allowance of attorney fees in the trial court but the court did not pass upon these applications. In the decree the court retained jurisdiction to thereafter hear and determine those applications. The trustee in its brief has suggested that it would be appropriate for this court, on the present appeal, to determine which parties are entitled to allowances, leaving it to the trial court to fix the specific amounts. The appellants say that said issue is not before this court on this appeal. With this we agree. Since the trial court has made no determination of the issues relating to attorney fees, we do not consider that such matters are properly before us at this time.

In paragraph 3 of the decree it is indicated that income in excess of $300 per month may be made available by the trustee

to the church for church purposes "other than those for which specific appropriation is made in Item IV of the will of R. Harry Jones, and other than preaching expense, for which purposes specific appropriation has been made by the trustees of the church, and said appropriation approved by the court." It is further provided in paragraph 10 that the court retained jurisdiction of this trust for the purpose of ordering further reports by the trustee to the court. We are of the opinion that the decree should be modified so as to eliminate from it the provisions for the further control of the trust estate by the trial court, including the provision requiring approval by the court of the expenditure of the so-called excess income. Taylor v. Hughes, 363 Mo. 389, 251 S.W.2d 94; State ex rel. McManus v. Muench, 217 Mo. 124, 117 S.W. 25; State ex rel. Heddens v. Rusk, 236 Mo. 201, 139 S.W. 199. See also, Appointment of Successor Trustees, Trust Administration and Settlements in Missouri, by Lee-Carl Overstreet, 13 Mo.L. Review 255, 1.c. 263 et seq. Section 456.210 RSMo 1949, V.A.M.S., providing for circuit court supervision of trust estates in which said court has appointed a substitute trustee, would have no application here since plaintiff is an original trustee. It is also our view that the quoted provision unduly restricts the church in the use of said income. The fact that the minimum payment specified in Item IV is apportioned to apply upon the payment of certain designated church expenses would not constitute a limitation or restriction upon the use of other available income from the trust estate for the same purposes. We think that the accumulated income should be paid to the church immediately and all future excess income should be paid to the church at reasonable intervals and that such income may be used for any church purpose other than for the payment of "preaching expense."

The judgment is reversed and the cause remanded for modification and for further proceedings in accordance with the views herein expressed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.