Louise OBERMEYER, Individually and as Assignee of Stockeley P. Towles, and as Personal Representative of the Estate of Margaret S. Derrick, and Elizabeth Ann Salmon, Appellants,

v.

BANK OF AMERICA, N.A., Washington University, Jeremiah W. (Jay) Nixon, and Washington University Dental Alumni Association, Respondents.

No. SC 85632.

Supreme Court of Missouri, En Banc.

June 22, 2004.

As Modified on Denial of Rehearing Aug. 24, 2004.

Janet F. Catalona, Patricia K. Susi, St. Louis, MO, for Appellants.

Mark G. Arnold, St. Louis, Jeremiah W. (Jay) Nixon, Atty. Gen., Tracy E. McGinnis, Asst. Atty. Gen., Sarah E. Ledgerwood, Asst. Atty. Gen., Jefferson City, Mitchell A. Margo, Richard A. Wunderlich, Thomas M. Blumenthal, St. Louis, MO, for Respondents.

MICHAEL A. WOLFF, Judge.

**Introduction**

When the late Dr. Joseph Kimbrough established his estate plan in 1955, Washington University had a dental school and a Dental Alumni Development Fund that existed to benefit the school. His 1955 estate plan included a trust to provide benefits for his niece and nephews during their lifetimes after Dr. Kimbrough's death. The trust provided that, upon the death of the survivor of the niece and nephews, the trust estate would be "paid over and distributed free of trust unto Washington University ... for the exclusive use and benefit of its Dental Alumni Development Fund."

Dr. Kimbrough died in 1963. Washington University discontinued the Dental Alumni Development Fund in 1965, and the university closed its dental school in 1991. The fund no longer exists. The trust paid benefits to the niece and nephews until 2000, when the last of the three died. The death of the last survivor in 2000 was the event that triggered the clause that the trust estate be paid to Washington University for the exclusive use and benefit of the Dental Alumni Development Fund.

Louise Obermeyer and Elizabeth Salmon, the great, great-nieces of Dr. Kimbrough, brought this action for declaratory judgment and construction of Dr. Kimbrough's inter vivos trust, which was valued at approximately $2.8 million in 2000. The circuit court held that Dr. Kimbrough established the trust with a general charitable intent and applied the cy pres doctrine, ruling in favor of Washington University, and directing that the university use the funds to support two dental-related professorships in the name of Dr. Kimbrough.

The gift "free from trust" was an absolute gift to Washington University. The circuit court appropriately provided for the disposition of the trust estate. The judgment of the circuit court is affirmed.

**Facts and Procedural History**

Dr. Kimbrough was born in 1870. In 1890, he enrolled in the Missouri Dental College, which became a school at Washington University, a tax-exempt, educational institution. He was graduated from the Washington University Dental School in 1894. Dr. Kimbrough was a practicing dentist throughout his career, and he served on the faculty of the Washington University Dental School.

During his lifetime, Dr. Kimbrough made numerous gifts to Washington University. Nearly one-half of the gifts went to no specific college within the university and were unrestricted—meaning the university could use the money as it pleased. Dr. Kimbrough also named Washington University in his estate plan, which consisted of a will and trust.

Dr. Kimbrough established a trust in 1945 to provide income and principal encroachment rights for his niece and nephews during their lifetimes. He amended the trust in 1955 to provide for the distribution of the trust upon the death of his great-niece and great-nephews, Margaret Salmon Towles (Derrick), Oscar Kimbrough, and Harvey W. Salmon. Section two of the trust provided that following the death of the last of Dr. Kimbrough's niece and nephews, the trust shall be distributed as follows:

Upon the death of the survivor of said niece and nephews and after the death of the Grantor, the property then constituting the trust estate shall be paid over and distributed free from trust unto Washington University, St. Louis, Missouri, for the exclusive use and benefit of its Dental Alumni Development Fund.

The trust did not contain a reversionary provision providing for an alternate disposition of the trust estate.

When the Dental Alumni Development Fund was created in 1954, contributions to it were unrestricted, allowing the deans of each school to use the funds for any purpose they deemed appropriate. The November 1954 edition of the Washington University Dental Journal announced the formation of the Dental Alumni Development Fund and reported that the purpose of the fund was to provide financial support for the dental school and improve the morale of the dental school's faculty. Dr. Kimbrough's gift to the Dental Alumni

Development Fund in May 1954 was made before the published report on the establishment of the Fund in the November 1954 issue of the Dental Journal.

Dr. Kimbrough died in 1963, and his life beneficiaries received income until their respective deaths. Margaret Derrick, the last surviving life beneficiary, died in 2000.

Washington University stopped using the Dental Alumni Development Fund in 1965, and began using the Annual Fund as its vehicle for the donation of unrestricted gifts. The Annual Fund still exists today. In 1991, Washington University closed the dental school and merged faculty, staff, and programs into its medical school and main campus. Dental medicine continues to be a component of education at the medical school, where maxillofacial surgery, prosthodontics, cleft palate/craniofacial deformities and pediatric dentistry are taught and performed.

Louise Obermeyer and Elizabeth Salmon, Dr. Kimbrough's great, great-nieces, filed suit claiming the trust was created with specific charitable intent, making the cy pres doctrine inapplicable, and the approximately $2.8 million fund should revert to them as Dr. Kimbrough's heirs. The named defendants in this lawsuit are Bank of America, the successor corporate trustee holding the funds of Dr. Kimborough, and Washington University, which also claimed the funds. The Attorney General was joined as a necessary party. Section 456.230, RSMo 2000. The Dental Alumni Association and a group of alumni of the dental school were granted permission to intervene, but are not part of this appeal.

Washington University and the Attorney General agreed with the heirs that there was a charitable trust and that it was impossible or impracticable to carry out the charitable purpose in the trust because the Dental Alumni Development Fund no

longer exists. They, however, claim the trust was created with general charitable intent and that, under the cy pres doctrine, the funds should be applied to Washington University for dental-related endeavors to most nearly carry out Dr. Kimbrough's charitable intent.

The circuit court held that Dr. Kimbrough established the trust with a general charitable intent and ruled in favor of Washington University. The circuit court then applied the doctrine of cy pres and ordered the assets be used to establish and maintain one or two chairs in Dr. Kimbrough's name for research and practice in cleft palate/craniofacial deformities, or for maxillofacial surgery and prosthodontics, or both.

After opinion by the Court of Appeals, Eastern District, this Court granted transfer. Jurisdiction is proper in this Court. Mo. Const. art. V, sec. 10.

**Standard of Review**

This Court owes no deference to the trial court's judgment in a case where the sole question is the construction of documents based on the language they employ. *Estate of Boder,* 850 S.W.2d 76, 79 (Mo. banc 1993). This case concerns the language of a trust document and the application of the cy pres doctrine. The ultimate issue in a cy pres case is the intent of the testator. *First Nat'l Bank of Kansas City v. Stevenson,* 293 S.W.2d 362, 366 (Mo.1956). Intent is generally a question of fact, not law. *Goff v. Case,* 17 S.W.3d 574, 578 (Mo.App.2000). The central issue of the nature of the charitable intent, however, is a matter of law. *Comfort v. Higgins,* 576 S.W.2d 331, 339 (Mo. banc 1978).

Missouri courts apply the cy pres doctrine based on all of the relevant facts and circumstances, not simply the language of the instrument making the grant.

*First Nat'l Bank of Kansas City v. Jacques,* 470 S.W.2d 557, 560 (Mo.1971). Because this Court considers all relevant facts and circumstances, which may include evidence outside of the trust document, this case is not confined to the construction of the trust document. Upon review, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The reviewing court defers to the trial court's factual findings and credibility determinations, but examines questions of law de novo. *Missouri Soybean Ass'n v. Missouri Clean Water Com'n,* 102 S.W.3d 10, 22 (Mo. banc 2003). Where the circuit court applies the cy pres doctrine, this Court gives deference to that court's application of the doctrine and disposition of the funds.

**Dr. Kimbrough Gave a Gift "Free From Trust" to Washington University**

The parties maintain that a charitable trust is at issue. Dr. Kimbrough, instead, created a trust for life beneficiaries with the remainder as a gift "free from trust" to Washington University "for the exclusive use and benefit of its Dental Alumni Development Fund." The property was in trust during the relevant life estates, but the amendment specifically provides that the distribution to the university shall be "free from trust." Once Dr. Kimbrough's named heirs died, there was no longer a trust and the distribution was to occur in accordance with the trust instrument.

**Application of the Cy Pres Doctrine**

The cy pres doctrine is based on the concern of equity to protect and preserve charitable bequests. *Levings v.*

*Danforth*, 512 S.W.2d 207, 209 (Mo.App. 1974). The original French phrase was "cy pres comme possible," meaning "as near as possible." GEORGE T. BOGERT, TRUSTS 520 (6th ed.1987). The doctrine of cy pres exists "to permit the main purpose of the donor of a charitable trust to be carried out as nearly as possible where it cannot be done to the letter." *Thatcher v. Lewis*, 335 Mo. 1130, 76 S.W.2d 677, 682 (1934).

 It was the policy of courts of equity "to declare valid, if possible, gifts to charity." *Burrier v. Jones*, 338 Mo. 679, 92 S.W.2d 885, 889 (banc 1936). Charitable trusts are favorites of equity, and they are "given effect wherever possible, by applying the most liberal rules of which the nature of the case will permit." *First Nat'l Bank of Kansas City v. Stevenson*, 293 S.W.2d at 367. Courts have the power and duty to apply the cy pres doctrine to seek to determine "as nearly as may be" the general purpose and intent of the settlor and adopt a plan or carry the general intent into fruition, thus preventing a failure of the charitable trust. Restatement (Second) of Trusts, sec. 399, p. 298 (1959).

 The cy pres power is generally confined to charitable trusts. BOGERT, TRUSTS at 520. Missouri courts have previously applied the cy pres doctrine only to charitable trusts; this Court has held that "absent the creation of a trust, there is no room for the application of the doctrine of cy pres." *Burrier*, 92 S.W.2d at 889.

While acknowledging the historical limitation of the cy pres doctrine to trusts, the doctrine is appropriate in certain cases involving gifts to charitable corporations. At issue here is a gift with direction from the grantor indicating the intended use of the trust assets. While the cy pres power is applied to gifts in trust, other jurisdictions have applied cy pres "to absolute gifts to charitable corporations or other organizations." GEORGE T. BOGERT, TRUSTS AND TRUSTEES, sec. 431, p. 105 (2d ed.1991). That view is consistent with analogous Missouri cases. This Court has held that a person may devote property to a charitable purpose by transferring it to a charitable corporation, in which case the principles applicable to charitable trusts are applicable to charitable corporations. *Voelker v. Saint Louis Mercantile Library Ass'n*, 359 S.W.2d 689, 694 (Mo.1962). Courts have applied the cy pres doctrine when a charitable institution that is an absolute donee has a deficiency. BOGERT, TRUSTS AND TRUSTEES, sec. 440 at 179. Such instances include: when a charitable institution cannot be identified by the name used; when impossibility arises in carrying out the intention of the donor charitable corporation, as the absolute donee ceased to exist before the gift was made, went out of existence after it received the gift, merged, or dissolved; and when the charitable corporation declines the gift, does not meet a condition precedent to the vesting of a gift, or is incompetent to take title. *Id.* at 179–195.

 Although the trust itself has ceased to exist, the gift comes from a trust. Moreover, most cy pres cases involve situations where many years have passed since the creation of a trust or other origination of the gift and the time the gift is to be given effect. Cy pres exists to conform the terms of the gift to current conditions. The money in the trust was to be "distributed free from trust unto Washington University, St. Louis, Missouri, for the exclusive use and benefit of its Dental Alumni Development Fund." Were Dr. Kimbrough's gift a charitable trust, the Court would readily apply the cy pres doctrine. Dr. Kimbrough's gift from the trust is an absolute gift to Washington University with an instruction that can no longer be observed because the fund

ceased to exist in 1965. Although courts typically reserve application of the cy pres doctrine for charitable trusts, and the absolute gift to the university may not fall under the categories listed above, the cy pres analysis is adopted to carry out Dr. Kimbrough's intent.

## Cy Pres Analysis

Missouri courts hold that to apply the doctrine of cy pres, three requirements must be met. First, the trust in question must be a valid charitable trust. Second, it is or becomes impossible, impracticable, or illegal to carry out the specific terms of the trust. Finally, the settlor must have established the trust with a general charitable intent. *Comfort,* 576 S.W.2d at 336, holds that "unless and until it is determined that a trust has failed, the question of general or specific charitable intent is irrelevant." If the settlor's intent was specific, the cy pres doctrine cannot be applied. The result would be a reversion for the settlor or the settlor's heirs. *Id.*[1]

 The parties agree that a trust was created with a charitable intent and that the trust has failed because the dental school was closed and the Dental Alumni Development Fund no longer exists. The parties maintain that the issue is whether the trust was created with general or specific charitable intent.

 A general charitable intent exists where there is an intent to assist a certain general type or kind of charity. *Ramsey v. City of Brookfield,* 361 Mo. 857, 237 S.W.2d 143, 145 (1951). General charitable intent "is an intent that a gift be

continued within the limits of its general purpose and that shall not cease when a particular thing is accomplished. Unquestionably, when the intent is to apply the gift to a continuing problem, there is a general charitable intent." *Thatcher,* 76 S.W.2d at 683. Gifts made to aid "education, science, literature, the poor, the sick, and so on" demonstrate general charitable intent. *Comfort,* 576 S.W.2d at 338. Because most charitable gifts are made to ameliorate a continuing problem, it must be determined whether the donor "intended to benefit all those affected by the continuing problem, or only certain of those persons." *Id.* The grantor's intent is specific when the grantor intended to "aid that kind of charity only in a particular way or by a particular method or means" and further intended that, "if the particular means failed, the gift failed." *Id.*

Dr. Kimbrough's gift to Washington University for the Dental Alumni Development Fund was not for a particular task to be accomplished, but to support dental medicine at Washington University, a profession of which he was deeply proud. The trust document contained no suggestion that the gift should fail if the particular fund ceased to exist.

In determining whether the charitable intent of the grantor is specific or general, the Court in *Comfort v. Higgins* set forth additional factors courts should consider.

First, *Comfort* distinguished between gifts of money and land, finding that courts have viewed gifts of land as "strong evidence of an absence of general charitable intent," while monetary gifts suggest

---

1. The basic principles of the cy pres doctrine are stated in Restatement (Second) of Trusts, Section 399:

 If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose,

and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.

general intent. *Id.* at 338. Dr. Kimbrough gave a gift of money, not real property, thus indicating general charitable intent.

The second factor is the existence of a reverter clause associated with the gift. Use of a direction for a reversion to the settlor in the case of failure indicates specific charitable intent, while the absence of a reverter clause supports general charitable intent. *Id.* Dr. Kimbrough's estate plan included reverter clauses as to the bequests for all of the individuals, which instructed the gifts to go to Washington University; however, it did not include a reverter clause as to the gift to Washington University in the will or trust.

The conclusion that a general charitable intent exists is typically reached where the heirs were either specifically excluded or had received other gifts in the will, indicating that no further gifts were included. *Id.* In his last will and testament, Dr. Kimbrough granted to Margaret Derrick the rest and remainder of his estate if she were living at the time of his death. If she were deceased at the time of his death, Dr. Kimbrough granted to Washington University the rest and remainder of his estate. In his will, Dr. Kimbrough left Louise Obermeyer $5,000 and *did not provide for Elizabeth Salmon* in his estate plan. The lack of a reverter clause for the charitable gift and the provision for one of his great, great-nieces are indicative of Dr. Kimbrough's general charitable intent.

The third relevant factor is whether the charitable gift was made in trust or outright. A gift in trust is indicative of specific charitable intent, while a gift made outright indicates general intent. *Id.* at 339. The trust provides that at the death of the survivor of the life beneficiaries, the trust is to be paid to Washington University "free from trust." Dr. Kimbrough's gift "free from trust" suggests general charitable intent.

The heirs argue that the use of the language, "for the exclusive use and benefit," requires a finding of specific charitable intent. Where the terms of a charitable trust direct a means of execution or dedicate the fund to a type of charity "forever" or "for no other purpose," or upon condition that it be applied "to no other purpose," these provisions do not necessarily demonstrate absence of a general charitable intent. *Ramsey,* 237 S.W.2d at 146. In *Ramsey,* a grant for the "sole purpose of building and equipping and maintaining a City hospital" and "no other" did "not necessarily show absence of a general charitable intent." *Id.* "Such provisions do not, ipso facto, show an intent that the trust should cease in the event of impossibility or impracticability of using the specified means." *Id.*

**Dr. Kimbrough's Charitable Intent**

▇▇▇ The question remains what Dr. Kimbrough would desire if he knew that his gift could not be used by the Dental Alumni Development Fund for the continued operation and prestige of the dental school.

▇▇▇▇ "[T]he accomplishment of the ultimate purpose of the testator is the matter of paramount importance and its achievement must be the object of any judicial permission to alter or deviate from the trust terms." *Reed v. Eagleton,* 384 S.W.2d 578, 586 (Mo.1964). The Court considers whether unforeseen circumstances have arisen that threaten the fulfillment of the charity and whether or not such circumstances warrant a court's exercise of its jurisdiction to enforce and protect charitable trusts. *Id.* at 585–86. In discerning the intent of the grantor, the basic equitable issue is what the settlor would desire if he or she knew that the trust could not be carried out. *Levings,*

512 S.W.2d at 211. A court is required to consider all the surrounding circumstances evidencing the grantor's intent. *See First Nat'l Bank of Kansas City v. Jacques*, 470 S.W.2d at 560. To adhere too strictly to the words of the testator may result in the defeat of the testator's ultimate purpose. IVA SCOTT ON TRUSTS, sec. 399.4, p. 535 (4th ed.1989). If the testator intended to make the property useful for charitable purposes, to render it useless for such purposes defeats the testator's intention. *Id.* "Under the guise of fulfilling a bequest, this is making a dead man's intentions for a single day a rule for subsequent centuries, when we know not whether he himself would have made it a rule even for the morrow." John Stuart Mill, *quoted in* IVA SCOTT ON TRUSTS, sec. 399 at 535.

The record repeatedly shows that Dr. Kimbrough loved dentistry and was very proud of his profession. Dr. Kimbrough graduated from the Washington University Dental School, taught at the Washington University Dental School, gave unrestricted gifts to Washington University, and left the remainder of his trust to Washington University, not to the dental school.

This Court agrees with the circuit court's conclusion that Dr. Kimbrough's charitable intent was to further education and dental medicine at Washington University. There is no evidence that Dr. Kimbrough wanted his gift so narrowly drawn and so inflexible that if it could not be used in a specifically named fund, it should lapse. The circuit court's decision to establish one or two chairs in Dr. Kimbrough's name for research and practice in dental fields is consistent with Dr. Kimbrough's charitable intent.

From 1954 to 1963, Dr. Kimbrough made 11 gifts to Washington University, including gifts to the Dental Alumni Development Fund, the Washington University School of Medicine, the Second Century Development Program, the Alumni Fund, and the Century Club. The gift in question was made to Washington University, not to the dental school. The only limitation on the gift was that it be used in the fund. The fact that Dr. Kimbrough made multiple other inter vivos gifts to Washington University that were unrelated to the dental school suggests that he had a general charitable intent to support dental education at Washington University, not only through the Dental Alumni Development Fund.

This Court also recognizes that under the tax law in effect before 1969, virtually all charitable remainder trusts provided substantial tax savings to the grantor's estate. *See Ellis First Nat'l Bank v. United States*, 213 Ct.Cl. 44, 550 F.2d 9, 11–12 (Ct. Cl. 1977). Dr. Kimbrough's 1955 amendment to the trust, giving the remainder interest to Washington University as opposed to his heirs, was essential to the tax savings and may be evidence of his general charitable intent.

**Dental Medicine Continues at Washington University**

The basic aspects of dental education at Washington University Dental School were the treatment of patients, education of dental students, and research of the faculty. Applying the funds to Washington University for dental-related endeavors most nearly carries out Dr. Kimbrough's intent because treatment of patients, postgraduate dental education, and research are ongoing at Washington University.

Although the dental school has been closed and the university no longer grants the basic degree in dental medicine, some dentistry continues through the medical school. Dr. Donald E. Huebener and Dr. W. Donald Gay were both faculty members of the dental school. Dr. Huebener is a member of a team of physicians, dentists, and orthodontists at the Cleft Palate Cra-

nial Facial Deformity Institute, of which he is a founding member. He is a pediatric dentist in the City of St. Louis and provides routine dental care to 20 to 22 children daily at the dental clinic and provides dental care to children with special health care needs and serves on the cleft palate team. Dr. Gay, a maxillofacial prosthodontist, serves as the Director of the Division of Maxillofacial Prosthetics of the Otolaryngology Department at the School of Medicine. He does primarily the same work at the School of Medicine as he did at the dental school. He fits dental prostheses for people with birth defects or who have suffered trauma or cancer. The circuit court's judgment directing one or two chairs in Dr. Kimbrough's name would support one or two such professorships.

Richard Smith, the last dean of the dental school and chairman of its orthodontics department, became a professor of anthropology at the university, where he and others educate students in dental-related topics and do research in the area of dental genetics and biomechanics of the face. The medical library at Washington University has two dental book collections. The circuit court found that "dental medicine is still a necessary component of Washington University Medical School," and remarked on the "borderline miraculous healing work" the university's professors continue to perform.

Neither the closing of the dental school nor the change in the Dental Alumni Development Fund make Dr. Kimbrough's gift useless. The trust estate can be used to continue treatment of dental patients, research, and post-graduate education in dental medicine.

**Conclusion**

Cy pres literally means "as near as." Dr. Kimbrough's objective was to further dental education at Washington University. The circuit court's disposition of the gift attempts to fulfill Dr. Kimbrough's intent as near as possible because it requires Washington University to use the money for dental-related education. The fact that the Dental Alumni Development Fund and the dental school no longer exist does not frustrate that objective, as the medical school at Washington University continues to teach and practice dental medicine.

There is no evidence that Dr. Kimbrough ever contemplated that the money would go to his great, great-nieces, and he did not include a provision for the reversion of the property to his heirs in the event that the fund or dental school would cease to exist.

The general purpose of Dr. Kimbrough's gift to support educational programs and projects in dental fields at Washington University can be accomplished. While the specific fund designated by the grantor to carry out this purpose no longer exists, the circuit court's disposition of the trust assets carries out Dr. Kimbrough's intent.

The judgment of the circuit court is affirmed.

All concur.